EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Margarita León Torres<br><br>Recurrida<br><br>v.<br><br>Erasmo Rivera Lebrón<br><br>Peticionario | Certiorari<br><br>2020 TSPR 21<br><br>204 DPR \_\_\_\_ |

Número del Caso: CC-2018-311

Fecha: 28 de febrero de 2020

Tribunal de Apelaciones:

>    Región Judicial de Ponce-Aibonito, Panel IX

Abogado de la parte Peticionaria:

>    Lcdo. Waddy J. Renta Acevedo

Abogado de la parte Recurrida:

>    Lcdo. Juan P. Rivera Román

Materia: Derecho Laboral: Requisitos para interponer correctamente una reclamación de despido sin justa causa bajo la modalidad de despido constructivo o tácito. Condiciones bajo las cuales se permite enmendar una querella bajo la Ley Núm. 2. No pueden incorporarse reclamaciones o defensas nuevas a una alegación a través de la oposición a una solicitud de sentencia sumaria.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Margarita León Torres<br><br>Recurrida<br><br>v.<br><br>Erasmo Rivera Lebrón<br><br>Peticionario | CC-2018-311 | *Certiorari* |

Opinión del Tribunal emitida por el Juez Asociado SEÑOR FELIBERTI CINTRÓN.

En San Juan, Puerto Rico, a 28 de febrero de 2020.

En este recurso atendemos varias interrogantes que surgieron al disponer de una solicitud de sentencia sumaria presentada en una acción de despido injustificado iniciada a tenor de la Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA sec. 185a *et seq.* (2017), según enmendada (Ley Núm. 80),[1] conforme al proceso sumario dispuesto en la Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA secs. 3118-3132 (2017) (Ley Núm. 2). Primeramente, señalamos los requisitos para interponer correctamente una reclamación

---

[1] Al aludir en esta Opinión a la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, nos referimos a las disposiciones de este estatuto **previo** a las enmiendas efectuadas por la *Ley de transformación y flexibilidad laboral*, Ley Núm. 4-2017, 29 LPRA sec. 185a *et seq.* (Supl. 2018), en vigor desde el 26 de enero de 2017. Destacamos que los cambios introducidos por el nuevo estatuto no afectan nuestra discusión en torno al concepto de justa causa según aplicado a los hechos de este recurso, los cuales sucedieron con anterioridad a la fecha de efectividad de estas enmiendas. Véanse *Guías para la interpretación de la legislación laboral de Puerto Rico,* primera edición, 8 de mayo de 2019, publicada por el Departamento del Trabajo y Recursos Humanos, págs. 12-15 y 123-127 y Art. 1.2 de la Ley Núm. 4-2017, 29 LPRA sec. 121a (Supl. 2018).

de despido sin justa causa bajo la modalidad de despido constructivo o tácito. Pautamos, además, bajo cuáles condiciones un promovente en un caso tramitado al amparo de la Ley Núm. 2 puede enmendar su querella. Por último, disponemos que no pueden incorporarse reclamaciones o defensas nuevas a una alegación a través de la oposición a una solicitud de sentencia sumaria.

A continuación, resumimos el trámite judicial que sirvió de base al recurso que nos ocupa.

## I. TRASFONDO PROCESAL

El 20 de enero de 2017 la Sra. Margarita León Torres (señora León Torres o empleada), presentó una querella sobre despido injustificado en contra del Sr. Erasmo Rivera Lebrón, su antiguo patrono (señor Rivera Lebrón o patrono), a tenor del procedimiento sumario provisto en la Ley Núm. 2.

Según consta en la aludida querella, la empleada laboró como asistente de contabilidad para la oficina de contabilidad del señor Rivera Lebrón desde el 1973. Alegó que, a pesar de que en todo momento desempeñó sus funciones satisfactoriamente y nunca se le amonestó, fue despedida ilegalmente de su empleo el 30 de mayo de 2016, por el mero capricho de su patrono.

El 27 de enero de 2017 el señor Rivera Lebrón contestó la querella y negó las imputaciones de despido injustificado de la empleada. Sostuvo que, en su lugar, la señora León Torres abandonó voluntariamente su empleo

sin justificación válida. A esos efectos, indicó que la empleada se personó al trabajo el 31 de mayo de 2016 y al día siguiente, es decir, el 1 de junio de 2016, presentó un certificado médico según el cual retomaría sus funciones el 13 de junio de 2016. Llegada esa fecha, la empleada entregó otro certificado médico mediante el cual se le excusaba de las labores de su empleo hasta el 18 de julio de 2016. Finalmente, el 18 de julio de 2016, la señora León Torres facilitó un último certificado médico eximiéndola de acudir a su trabajo hasta el 5 de agosto de 2016. Sin embargo, luego de expirado dicho término, ésta no se reintegró a sus labores en la oficina del patrono.

En febrero de 2017, luego de haberse presentado y contestado la querella en cuestión, la señora León Torres le cursó unos interrogatorios y solicitud de producción de documentos al patrono los cuales se contestaron el próximo mes.

El 3 de mayo de 2017, el señor Rivera Lebrón sometió una solicitud de sentencia sumaria mediante la cual planteó que la empleada no fue despedida de su empleo, sino que abandonó su puesto de trabajo voluntariamente, por lo cual correspondía desestimar la querella en su totalidad. Como parte de su solicitud, sostuvo que no existía controversia sobre los siguientes hechos esenciales:

1. El 7 de mayo de 1973, la [señora León Torres] comenzó a laborar para [el patrono] como empleada […] [por] tiempo indefinido.

2. El puesto que ocupaba la [empleada] era como Data Entry.

3. La [empleada] alega que el 30 de mayo de 2016 fue despedida ilegalmente de su empleo.

4. [El patrono] niega el despido de la [empleada] e indica que la [empleada] nunca fue despedida de su trabajo.

5. La [empleada] le envió un pliego de Interrogatorio y Producción de Documentos [al patrono] el 3 de febrero de 2017.

6. El [patrono] le envió su contestación a dicho Interrogatorio el 16 de marzo de 2017.

7. El día 30 de mayo de 2016, día en que la [empleada] alega que fue despedida ilegalmente, culminó su jornada de trabajo en horario de 9:07 a.m. a 12:33 p.m. y 1:01 p.m. a 4:58 p.m.

8. El día 31 de mayo de 2016, un día después que la [empleada] alega que fue despedida ilegalmente, regresó a su trabajo y registró su asistencia nuevamente, entrando a las 7:22 a.m. y retirándose del mismo a las 9:02 a.m.

9. Al día siguiente, el 1 de junio de 2016, la [empleada] comparece nuevamente a su lugar de trabajo y entrega un certificado médico con fecha de 1 de junio de 2016, emitido por el Psiquiatra Alfonso A. Hernández Ortiz, en donde indica que la [empleada] retornará a trabajar el lunes 13 de junio de 2016.

10. El día 13 de junio de 2016, la [empleada] comparece nuevamente a su lugar de trabajo y entrega un segundo certificado médico con fecha de 13 de junio de 2016, en donde se le extendió su periodo de descanso hasta el 15 de julio de 2016, indicando en el mismo que la [empleada] regresará a su trabajo el 18 de julio de 2016.

11. El día 18 de julio de 2016, la [empleada] comparece nuevamente a su trabajo y entrega nuevamente un tercer certificado médico, esta vez emitido por la Dra. Nadja Díaz Báez, donde le

extiende el descanso **hasta el 5 de agosto de 2016**. (Énfasis nuestro).

12. El día 7 de julio de 2016, se le envió una carta a la [empleada] para que se comunicara con la oficina. Cosa que nunca ocurrió.

13. El día **24 de agosto de 2016**, la [empleada] envía una carta al [patrono] autorizando a su primo Edgardo Ortiz para que se le hiciera entrega de su "sueldo que aún no me han pagado". (Énfasis nuestro).

14. El mismo día[,] 24 de agosto de 2016 se le hace entrega de lo solicitado en el inciso anterior por la [empleada] a su primo, Edgardo Ortiz del pago de la semana del 23 al 27 de mayo y de la semana del 30 de mayo al 3 de junio de 2016, por concepto de horas trabajadas y días por enfermedad, según estaban disponibles desde el pasado 3 de agosto de 2016.

15. Entre los documentos que se le hacen entrega al Sr. Edgardo Ortiz el 24 de agosto de 2016 se encontraba el talonario de pago por los días de enfermedad que tenía acumulados la [empleada] que ascendían a 30 horas, los que comprendieron el resto del día 31 de mayo de 2016 y del 1 al 3 de junio de 2016.

16. La [empleada] no tiene en su poder ningún documento que evidencie que la misma fue despedida de su empleo.

El Tribunal de Primera Instancia le concedió a la empleada un término para responder a la solicitud del patrono. Entre tanto, se le permitió cambiar de representación legal. Una vez compareció el nuevo abogado y luego de una prórroga otorgada por el tribunal, finalmente la señora León Torres sometió su oposición a la solicitud de sentencia sumaria en donde, **por primera vez, adujo que el despido había sido uno constructivo**. A esos efectos, acompañó su escrito con una declaración jurada donde detalló cómo el patrono la trató de manera hostil,

la humilló y le cambió arbitrariamente sus responsabilidades laborales. Asimismo, alegó que esa conducta la afectó emocionalmente lo que provocó que se marchase de la oficina el 31 de mayo de 2016 en busca de tratamiento médico. Relató que posteriormente le entregó al patrono tres excusas médicas en diferentes momentos hasta que, el 24 de agosto de 2016, decidió que no podía regresar al trabajo y autorizó a su primo a recoger el último pago. En apoyo a su contención, alegó que el 30 de mayo de 2016, al regresar de sus vacaciones, tuvo una discusión con el señor Rivera Lebrón concerniente a sus responsabilidades y condiciones de trabajo. Según la señora León Torres, en esa ocasión el patrono le indicó que "si no aceptaba la manera de pago que me tenía que ir del lugar de la oficina, y por no aceptar las órdenes me fuera al infierno". *Declaración jurada*, párr. 15.

El señor Rivera Lebrón objetó la oposición sometida por la empleada. Sostuvo que no se refutaron los hechos incontrovertidos propuestos en su moción conforme a la normativa aplicable a las solicitudes de sentencia sumaria. De otra parte, argumentó que era improcedente permitir que, mediante una declaración jurada, se expusieran hechos que no surgían de las alegaciones vertidas en la propia querella.

El 31 de agosto de 2017 el Tribunal de Primera Instancia acogió la solicitud del patrono y dictó una *Sentencia* a favor del señor Rivera Lebrón. Dictaminó que,

conforme a los hechos incontrovertidos propuestos por el señor Rivera Lebrón, la empleada abandonó su empleo al no reportarse a trabajar en la fecha que disponía el último certificado médico que entregó a su patrono. Razonó que las alegaciones de la querella eran insuficientes para configurar una reclamación de despido constructivo ya que le correspondía a la empleada establecer, desde los inicios del litigio, todos los elementos necesarios para aducir este tipo de acción. Señaló, además, que el permitir estas alegaciones en esa etapa de los procedimientos colocaban al patrono en desventaja y le vulneraban su derecho al debido proceso de ley.

La señora León Torres recurrió entonces al Tribunal de Apelaciones el cual emitió una sentencia revocatoria. El aludido Foro resolvió que el Tribunal de Primera Instancia erró al negarse a considerar las alegaciones de despido constructivo de la empleada por entender que no formaban parte de la querella. Dictaminó que la definición de despido injustificado provista en la Ley Núm. 80 incluye situaciones de despido constructivo lo que hacía innecesario requerir una alegación específica sobre este particular. Dispuso que, resolver lo contrario, contravenía el propósito social y reparador del estatuto y, a su vez, privaba a la empleada de su día en corte. Agregó que la querella cumplía con los requisitos concernientes a las alegaciones según provistos en la

Regla 6.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V (2010) (Regla 6.1).

El Tribunal de Apelaciones concluyó que el foro primario no solamente cometió un error de Derecho al dictar la referida sentencia, sino que, además, existían controversias de hechos materiales que impedían la resolución sumaria del caso. Específicamente, determinó que le correspondía al Tribunal de Primera Instancia dilucidar si la señora León Torres abandonó su empleo voluntariamente o el patrono incurrió en conducta tal que la obligó a renunciar.

El señor Rivera Lebrón instó entonces el recurso que nos ocupa y consignó los siguientes señalamientos:

A. Erró el Tribunal de Apelaciones al revocar al Tribunal de Primera Instancia por concluir que el Tribunal de Primera Instancia cometió un error de Derecho al desestimar por sentencia sumaria, por éste negarse a considerar las alegaciones de despido constructivo por no haber sido incluidas en la Querella original.

B. Erró el Tribunal de Apelaciones al revocar al Tribunal de Primera Instancia por entender que existen en el presente caso controversias de hechos esenciales y materiales que impiden la solución por la vía sumaria.

## II. DERECHO APLICABLE

### A. Ley Núm. 2

#### i. Trámite expedito

La Ley Núm. 2 introdujo a nuestro Sistema de Derecho un trámite especial para atender las querellas presentadas por empleados u obreros en contra de sus patronos relacionadas con disputas laborales. Ruiz Camilo v.

Trafon Group, Inc., 200 DPR 254 (2018). Véase, además, 32 LPRA sec. 3118 (2017). Este mecanismo se distingue por la celeridad con la cual deben encausarse estos procesos judiciales.

Con ese propósito, se alteraron ciertos términos y condiciones provistas en nuestro ordenamiento procesal, las cuales rigen de ordinario la litigación civil.[2] Así, por ejemplo, bajo esta ley especial la demanda se denomina "querella en la cual se expresarán por el […] empleado los hechos en que se funda la reclamación". Sec. 1 de la Ley Núm. 2, 32 LPRA sec. 3118 (2017). El demandado, o querellado, cuenta escasamente con diez (10) días para responder a la querella. Esto ocurre si la notificación se efectuó en el distrito judicial en el cual se inició la acción, como sucedió en este caso.[3] De igual forma, únicamente se considerarán solicitudes del querellado para extender el término para contestar la querella si se consigna bajo juramento causa justificada para ello. "En ningún otro caso tendrá jurisdicción el tribunal para conceder esa prórroga". Sec. 3 de la Ley Núm. 2, 32 LPRA sec. 3120 (2017). En esa misma línea, se limita al

---

[2] No obstante, cabe señalar que las Reglas de Procedimiento Civil son aplicables de manera supletoria al trámite de asuntos iniciados bajo la Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA Sec. 3118 et seq. (2017) (Ley Núm. 2), siempre y cuando no resulten incompatibles con lo allí provisto. Así pues, la Sec. 3 de la Ley Núm. 2 dictamina que, en estos casos, "se aplicarán las Reglas de Procedimiento Civil en todo aquello que no esté en conflicto con las disposiciones específicas de las mismas o con el carácter sumario del procedimiento establecido [en dicho estatuto]". 32 LPRA sec. 3120 (2017).

[3] En los demás casos, el término para responder es de quince (15) días. Sec. 3 de la Ley Núm. 2, 32 LPRA sec. 3120 (2017).

querellado a "una sola alegación responsiva en la cual deberá incluir todas sus defensas y objeciones, entendiéndose que renuncia a todas las defensas u objeciones que no incluya en dicha alegación responsiva". Íd.

En consonancia con lo anterior, no le está permitido al patrono enmendar su contestación a la querella excepto en aquellas situaciones en que la enmienda sirva para clarificar o ampliar una defensa afirmativa previamente interpuesta, o contribuya a la pronta solución del caso. En otras palabras, quedan excluidas nuevas defensas afirmativas. Srio. del Trabajo v. J.C. Penney Co., Inc., 119 DPR 660 (1987). Véase, además, Izagas Santos v. Family Drug Center, 182 DPR 463 (2011); Vélez Cortés v. Baxter, 179 DPR 455 (2010).

Con el fin de asegurar el trámite expedito de las reclamaciones laborales se incorporaron al estatuto, además, limitaciones a los mecanismos de descubrimiento de prueba que normalmente están disponibles en el curso de una litigación civil. Así pues, conforme a la Sec. 3 de la Ley Núm. 2, 32 LPRA sec. 3120 (2017), le está prohibido a las partes en el proceso someterle a su oponente más de un pliego de interrogatorios o tomar más de una deposición. Tampoco se podrá tomar la deposición a una parte a quien previamente se le haya cursado un interrogatorio ni someterle un interrogatorio luego de habérsele tomado la deposición, excepto que medien

circunstancias excepcionales y el tribunal, dentro de su discreción, lo avale. Por último, no están permitidas las deposiciones de los testigos salvo que el tribunal dé su consentimiento, siempre y cuando se haya justificado la necesidad para ello.

Cónsono con este enfoque, a través de la enmienda a la Sec. 9 de la Ley Núm. 2, *supra*, efectuada mediante la Ley Núm. 133-2014, 32 LPRA sec. 3127 (2017), se acortaron los periodos para solicitar revisión en casos tramitados bajo la Ley Núm. 2. De manera que, posterior a esta enmienda, las apelaciones en este tipo de litigio deben presentarse ante el Tribunal de Apelaciones dentro de los diez (10) días de la notificación de la sentencia recurrida y las peticiones de *certiorari* al Tribunal Supremo no más tarde de veinte (20) días de notificada la determinación del foro apelativo intermedio.

Por último, hemos resuelto que en un procedimiento sumario laboral provisto por la Ley Núm. 2 no está permitido solicitar reconsideración de determinaciones judiciales, ya sean éstas interlocutorias o finales. Patiño Chirino v. Parador Villa Antonio, 196 DPR 439 (2016); Medina Nazario v. McNeil Healthcare LLC, 194 DPR 723 (2016). A esos efectos señalamos que, "en atención a los fines que persigue la ley y a la política pública que la inspira, […] la moción de reconsideración es incompatible con el procedimiento sumario laboral provisto

por la Ley Núm. 2". <u>Patiño Chirino v. Parador Villa Antonio</u>, *supra*, pág. 450.

La premura que sirve de hilo conductor al estatuto responde al interés social vinculado a las reclamaciones laborales. Por este medio se promueve la protección de los derechos del empleado quien ha perdido su fuente de ingresos o ha sido privado de sus derechos. A la vez, opera como disuasivo frente a despidos injustificados y otras prácticas arbitrarias dirigidas en contra de los obreros en su ambiente de trabajo. Cabe notar que, como regla general, el patrono cuenta con mayores recursos para afrontar un litigio y, a diferencia del empleado, comúnmente no tiene urgencia en la resolución de la disputa.

> Debido a su naturaleza y finalidad, estas reclamaciones ameritan ser resueltas con celeridad de forma tal que se pueda implantar la política pública del Estado de proteger el empleo, desalentar el despido sin justa causa y proveer al obrero despedido los medios económicos para su subsistencia mientras consigue un nuevo empleo. <u>Ruiz Camilo v. Trafon Group, Inc.</u>, *supra*. Véase, además, <u>Medina Nazario v. McNeil Healthcare LLC</u>, *supra*; <u>Ruiz v. Col. San Agustín</u>, 152 DPR 226 (2000).

En función del interés protegido por esta legislación social, consistentemente hemos destacado la importancia de asegurar que los trámites judiciales encaminados bajo el palio de la Ley Núm. 2 no pierdan su esencia expedita. <u>Ruiz Camilo v. Trafon Group, Inc.</u>, *supra*. Por lo tanto, corresponde a los tribunales asegurar la estricta observancia del proceso sumario y les está vedado conceder

prórrogas que no se ajusten al mandato legislativo. Ruiz v. Col. San Agustín, *supra*.

### ii. Enmienda a querella

De otra parte, examinamos si le está permitido a un promovente enmendar su querella en un caso iniciado conforme al trámite provisto en la Ley Núm. 2 y, de contestar en la afirmativa, bajo cuáles circunstancias.

Contrario al caso de las enmiendas a la contestación de una querella en donde la propia ley impone restricciones rigurosas para poder efectuarse, el estatuto guarda silencio absoluto en torno a enmiendas a la querella propiamente. Véase Marín v. Fastening Systems, Inc., 142 DPR 499, 521 (1997) (Negrón García, J., op. disidente). Véase, además, E.J. Mendoza Méndez, Procedimiento Sumario Laboral, [Ed. del autor], 2015, pág. 127.

Enfrentados al mutismo del estatuto, nos vemos obligados a atender este dilema valiéndonos del principio fundamental de hermenéutica según el cual, la letra de la ley debe interpretarse de manera cónsona con la intención legislativa que la inspiró. Durante ese proceso estaremos guiados, además, por los fines que el estatuto persigue y la política pública que impulsa. Ruiz Camilo v. Trafon Group, *supra*; Medina Nazario v. McNeil Healthcare LLC, *supra*.

Acorde con lo anterior, no podemos perder de perspectiva que el trámite expedito preceptuado en la Ley

Núm. 2 está diseñado específicamente para beneficio del propio trabajador. A través del mecanismo provisto en la ley, se procura asegurar que las reclamaciones instadas por los empleados a quienes esta disposición protege fluyan de manera acelerada de modo que éstos puedan recuperarse económicamente lo más pronto posible.

Por consiguiente, tomando en cuenta que la finalidad de este esquema normativo es precisamente proteger los intereses de los empleados al tramitar reclamos que han surgido en el ámbito laboral, no vemos razón de peso para impedir que, una vez iniciado el proceso judicial, un querellante modifique su alegación si así lo estima necesario. Lejos de perjudicarle, esta opción procesal indudablemente representa una ventaja para aquellos empleados quienes, por alguna razón, se encuentran ante la necesidad de variar de algún modo su reclamación, luego de haberla presentado ante el foro judicial.

Ahora bien, este derecho **no es irrestricto**. Cualquier enmienda que se proponga a la querella deberá estar a tono con los parámetros establecidos en la Regla 13 de Procedimiento Civil de 2009, 32 LPRA Ap. V (2010) (Regla 13), para esos fines.[4] Por lo tanto, cuando un promovente

---

[4] En ocasiones anteriores hemos aludido a la Regla 13 de Procedimiento Civil de 2009, 32 LPRA Ap. V (2010), en atención a controversias relacionadas a procesos sujetos al trámite provisto en la Ley Núm. 2. A esos efectos, hemos resuelto que no se permitirán enmiendas a la contestación a la querella excepto en situaciones en que la modificación propuesta sirva para clarificar o ampliar alguna defensa afirmativa previamente invocada y en aras de proteger el carácter sumario del proceso. Véanse Vélez Cortés v. Baxter, 179 DPR 455 (2010); Srio. de Trabajo v. J.C. Penney Co., Inc., 119 DPR 660 (1987); Díaz v. Hotel Miramar Corp., 103 DPR 314 (1975).

interese enmendar su querella, deberá primero cerciorarse de que cumple con todas las exigencias impuestas por la normativa procesal correspondiente, incluyendo obtener el permiso del tribunal, de ello ser necesario.

El requisito del consentimiento del tribunal para una parte poder enmendar sus alegaciones dependerá del momento en que se propone el cambio. Conforme dispone la Regla 13.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V (2010) (Regla 13.1), no hará falta la aprobación judicial si la enmienda se presenta antes de que se notifique una alegación responsiva. Si la alegación no admite alegación en respuesta, se permitirá igualmente la enmienda dentro del término de veinte (20) días de haberse notificado, siempre y cuando el caso no haya sido señalado para juicio.

En todos los otros supuestos será menester obtener aprobación judicial anticipadamente para proceder a enmendar la alegación. Aunque el tribunal cuenta con discreción para conceder las solicitudes liberalmente, ejercitará su discernimiento guiado por los siguientes criterios rectores: "'(1) el impacto del tiempo transcurrido previo a la enmienda, (2) la razón de la demora, (3) el perjuicio a la otra parte, y (4) la procedencia de la enmienda solicitada'". SLG Font Bardón v. Mini-Warehouse, 179 DPR 322, 334 (2010) (citando a SLG Sierra v. Rodríguez, 163 DPR 738, 748 (2005)). Véase,

además, <u>Accurate Sols. v. Heritage Environmental</u>, 193 DPR 423 (2015).

Por último, y no menos importante, una parte que inicia un proceso judicial a tenor de las disposiciones de la Ley Núm. 2 debe ser consciente de las posibles consecuencias procesales que puede conllevar el variar las alegaciones de su querella.

> [E]l enmendar la querella original tiene sus repercusiones. Primeramente, puede inclinar la balanza a favor de convertir el procedimiento en uno ordinario. Segundo, permite traer defensas afirmativas nuevas. Tercero, inevitablemente amplía el ámbito del descubrimiento de prueba. Mendoza Méndez, *op. cit.*, pág. 127.

## B. Ley Núm. 80

### i. Despido sin justa causa

La Ley Núm. 80 ofrece una protección valiosa a aquellos empleados remunerados, contratados por tiempo indeterminado y despedidos injustificadamente de su trabajo. En estos casos, el patrono tendrá que pagarle al empleado cesanteado una indemnización comúnmente denominada como "mesada", además del sueldo devengado hasta el despido. <u>González Méndez v. Acción Social *et al.*</u>, 196 DPR 213 (2016); <u>Lugo Montalvo v. Sol Meliá Vacation</u>, 194 DPR 209 (2015); <u>SLG Torres-Matundan v. Centro Patología</u>, 193 DPR 920 (2015).

El pago de la mesada sirve un doble propósito. Primeramente, desalienta la práctica de despedir personal sin que exista causa justificada para ello, a la vez que le proporciona una ayuda económica al empleado quien ya no

cuenta con los ingresos de su antiguo puesto. González Méndez v. Acción Social *et al.*, *supra*; SLG Torres-Matundan v. Centro Patología, *supra*; Reyes Sánchez v. Eaton Electrical, 189 DPR 586 (2013).

De otra parte, según provisto en la Ley Núm. 80, la mesada representa el remedio exclusivo disponible a un empleado cesanteado injustificadamente frente a su ex patrono. Esto es así a no ser que existan otras causas de acción independientes al despido. González Méndez v. Acción Social *et al.*, *supra*; Lugo Montalvo v. Sol Meliá Vacation, *supra*; SLG Torres-Matundan v. Centro Patología, *supra*.

A pesar de que la Ley Núm. 80 no fija concretamente qué constituye un despido injustificado, sí menciona varios escenarios que liberan al patrono de responsabilidad. Algunos de estos supuestos están basados en conducta atribuible al empleado mientras que otros responden al cierre, reorganización o reducción de la empresa. Véase Art. 2 de la Ley Núm. 80, 29 LPRA sec. 185b (2017). Roldán Flores v. M. Cuebas, 199 DPR 664 (2018); González Méndez v. Acción Social *et al.*, *supra*; SLG Torres-Matundan v. Centro Patología, *supra*; Reyes Sánchez v. Eaton Electrical, *supra*; SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414 (2013).

En lo concerniente específicamente al comportamiento del empleado, el esquema normativo dispone que se reputará justa causa para el despido si éste: (1) ha exhibido un

patrón de conducta impropia o desordenada; (2) no ha cumplido con sus labores de manera eficiente, ha realizado su trabajo tarde o negligentemente o en violación a las normas aplicables, o (3) ha violado reiteradamente aquellas reglas y reglamentos razonablemente establecidos para la operación del establecimiento y los cuales le han sido suministrados oportunamente. Art. 2 de la Ley Núm. 80, *supra*. Véase, además, González Méndez v. Acción Social *et al.*, *supra*.

Por último, la Ley Núm. 80 dispone que "[n]o se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento". Art. 2 de la Ley Núm. 80, *supra*. Véase, además, González Méndez v. Acción Social *et al.*, *supra*.

Ahora bien, en ocasiones anteriores hemos advertido que las circunstancias representativas de justa causa, según enumeradas en el Art. 2 de la Ley Núm. 80, *supra*, constituyen meros ejemplos de acontecimientos asociados a un despido. De esta manera reconocemos que el estatuto no puede prever el universo de incidencias que puedan surgir en un entorno laboral y que desemboquen en la cesantía de un empleado. SLG Torres-Matundan v. Centro Patología, *supra*.

### ii. Despido tácito o constructivo

En el contexto de la Ley Núm. 80, el término "despido" es uno amplio y **no** se limita estrictamente a la gestión

concreta de un patrono de prescindir de los servicios de un empleado. Rivera Figueroa v. The Fuller Brush Co., 180 DPR 894 (2011).

Así pues, el esquema normativo incluye, entre las definiciones del término "despido", una renuncia ocasionada por "actuaciones del patrono dirigidas a inducirlo o forzarlo a renunciar[,] tales como imponerle o intentar imponerle condiciones de trabajo más onerosas, reducirle el salario, rebajarlo en categoría o someterlo a vejámenes o humillaciones de hecho o de palabra". Art. 5 Ley Núm. 80, 29 LPRA sec. 185e (2017). Es decir, el trabajador se siente tan incómodo con la situación laboral imperante en su lugar de empleo que no tiene otro remedio que abandonarlo. Por consiguiente, el distintivo peculiar de un despido constructivo reside en que el patrono fuerza al empleado a dimitir de su trabajo. Rivera Figueroa v. The Fuller Brush Co., supra. Debido a sus características particulares hemos catalogado esta modalidad de despido injustificado como "despido constructivo o tácito".[5] (Énfasis en original). Íd., pág. 907.

---

[5] Hace ya varias décadas, incluso previo a la vigencia de la Ley Núm. 80, que incorporamos jurisprudencialmente el despido tácito a nuestra litigación laboral. En aquel momento indicamos que "[l]os actos voluntarios e injustificados de un patrono encaminados a obligar al empleado a dejar su cargo, constituyen un despido cuando la única alternativa razonable que queda al empleado es la de abandonar el cargo". Vélez de Reilova v. R. Palmer Bros., Inc., 94 DPR 175 (1967).

La Guía Revisada para la interpretación y aplicación de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 30 de junio de 2014, publicada por el Departamento del Trabajo y Recursos Humanos, recoge la trayectoria jurisprudencial de esta doctrina.

Ahora bien, para poder establecer una acción de despido constructivo, "no basta con cualquier molestia o condición antipática en el empleo y, cuando se trate de vejámenes y humillaciones, estos deben ser de magnitud sustancial". (Escolio omitido). Íd., pág. 908. El ambiente en el empleo debe tornarse intolerable a tal nivel que la única alternativa razonable para el empleado afectado sea dimitir. Íd.

Dicho de otra forma:

> [La] doctrina del despido tácito es una profundamente arraigada en nuestra jurisdicción. […] Sin embargo, no puede utilizarse inflexiblemente por los obreros, cuando se encuentran en cualquier circunstancia laboral estresante. Por tal razón, sólo procede en aqu[e]llas instancias donde la prueba demuestre, mediante inferencia razonable, que la única alternativa del empleado es abandonar su empleo. C. Zeno Santiago y V.M. Bermúdez Pérez, Tratado de Derecho del Trabajo, San Juan, Pubs. JTS, T. I, 2003, págs. 101-102.

La intensidad y el alcance de la conducta patronal en controversia se examinarán desde una óptica objetiva y no desde la perspectiva del empleado promovente. Es decir, se evaluará "si una persona razonable se sentiría forzada a renunciar como resultado de las acciones del patrono". (Escolio omitido). Íd., pág. 908.

**C. Las alegaciones – Regla 6.1 de Procedimiento Civil**

Nuestro ordenamiento procesal no establece requisitos complicados para la redacción de una demanda. Meramente se exige que el escrito comprenda "una relación sucinta y

sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio". Regla 6.1.

Conforme a lo anterior, no tienen que exponerse detalladamente en la demanda todos los hechos que dan base a la reclamación. Informe de Reglas de Procedimiento Civil, Secretariado de la Conferencia Judicial y Notarial, diciembre 2007, Vol. I, pág. 70.

De igual manera, la Regla 6.5(a) de Procedimiento Civil de 2009, 32 LPRA Ap. V (2010), especifica que "[c]ada aseveración en una alegación deberá ser sencilla, concisa y directa" sin que sea necesario valerse de "fórmulas técnicas" en el proceso de redacción.

Ahora bien, según hemos señalado anteriormente, las alegaciones se interpretarán de manera conjunta y liberalmente a favor de la parte demandante, con el objetivo de hacer justicia. Torres, Torres v. Torres et al., 179 DPR 481 (2010); Álamo v. Supermercado Grande, Inc., 158 DPR 93 (2002); León v. Rest. El Tropical, 154 DPR 249 (2001).

Es necesario acentuar que la finalidad de las alegaciones es esencialmente alertar a la parte adversa en el proceso sobre los hechos y las reclamaciones que debe hacer frente en el transcurso del trámite judicial. De manera que, la información provista en la demanda debe estar a tono con los requisitos mínimos de notificación según requiere el debido proceso de ley.

En lo concerniente al debido proceso de ley, reiteradamente hemos advertido que el propósito de las alegaciones es notificar a la parte contraria, a grandes rasgos, de las reclamaciones en su contra para brindarle de este modo la oportunidad de comparecer al proceso y defenderse, si es que lo desea. Torres, Torres v. Torres et al., supra; Álamo v. Supermercado Grande, Inc., supra; León v. Rest. El Tropical, supra.

Por consiguiente, el documento sí debe incluir "un mínimo de detalle que informe sobre los alegados actos lesivos que causaron el alegado perjuicio". J.A. Echevarría Vargas, Procedimiento Civil Puertorriqueño, 1ra ed. rev., [Ed. del autor], 2012, pág. 86. Es decir, "debe contener un grado suficiente de información sobre las imputaciones de suerte que le permita a la parte demandada entender la sustancia de lo que debe defender. De lo contrario la parte en la defensiva tendría que adivinar las causas a ser litigadas en su contra". Íd., pág. 80.

Según expresa con precisión el profesor Rafael Hernández Colón:

> [La Regla 6.1] impone al demandante una obligación relativamente leniente. Un demandante cumple con la exigencia de la regla al notificar al demandado de su reclamación y del remedio de tal modo que permita al demandado formular su contestación. […] No obstante, si bien el deber que se le exige al demandante es bastante liberal y se le requiere brevedad en su exposición, la alegación debe aún contener la suficiencia fáctica que se necesita para que el demandado reciba una adecuada notificación sobre lo que se le reclama y la base que la sustenta. (Escolios omitidos). R. Hernández Colón, Práctica Jurídica

de Puerto Rico: Derecho Procesal Civil, 6ta ed.,
San Juan, Ed. LexisNexis, 2017, pág. 287.

### D. Sentencia sumaria

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V (2010) (Regla 36), permite a los tribunales disponer parcial o totalmente de litigios civiles en aquellas situaciones en que no exista alguna controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. Rodríguez García v. UCA, 200 DPR 929 (2018); Roldán Flores v. M. Cuebas, *supra*; Rodríguez Méndez v. Laser Eye, 195 DPR 769 (2016); Lugo Montalvo v. Sol Meliá Vacation, *supra*; Meléndez González *et al.* v. M. Cuebas, 193 DPR 100 (2015).

Los tratadistas federales catalogan el proceso de sentencia sumaria tramitado conforme a la Regla 56 de Procedimiento Civil Federal, análoga a la Regla 36 nuestra, como uno dirigido a "pierce the pleadings". Es decir, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos según allí descritos ameritan dilucidarse en un juicio.

Uno de los tratados reconocidos en el campo de procedimiento civil federal sintetizó este proceso de la siguiente manera:

> Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried. (Escolios omitidos). 10A Wright,

Miller and Kane, <u>Federal Practice and Procedure:</u> <u>Civil</u> Sec. 2712, pág. 239 (2016).

También se ha descrito de la siguiente forma por otro de los tratados de prestigio en este ámbito:

It is often said that the object of a summary judgment motion is to "pierce the pleadings" to determine whether trial is required. This means that the parties may no longer rely on the sufficiency of their allegations, but rather must be able to show that they have proof to support their allegations. (Escolio omitido). 11 <u>Moore's Federal Practice</u> 3d Sec. 56.02[1], págs. 56-17 – 56-18 (2012).

En otras palabras, al disponer de una moción de sentencia sumaria el tribunal necesariamente tendrá que escudriñar las alegaciones de la demanda o las defensas interpuestas para determinar si existen hechos en controversia que deban esclarecerse mediante un juicio.

Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito. Primeramente, se agiliza el proceso judicial logrando de este modo un alivio a la carga de los tribunales. A la vez provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. <u>Rodríguez García v. UCA</u>, *supra*; <u>Roldán Flores v. M. Cuebas</u>, *supra*; <u>Meléndez González *et al*. v. M. Cuebas</u>, *supra*; <u>Savary *et al*. v. Mun. Fajardo *et al*.</u>, 198 DPR 1014 (2017).

A esos efectos, la solicitud de sentencia sumaria se ha descrito como un medio conveniente para los jueces descartar reclamaciones inmeritorias y descongestionar los

calendarios judiciales. Lugo Montalvo v. Sol Meliá Vacation, *supra*; Meléndez González *et al*. v. M. Cuebas, *supra*; SLG Zapata-Rivera v. J.F. Montalvo, *supra*; Const. José Carro v. Mun. Dorado, 186 DPR 112 (2012). En otras palabras, procede utilizarlo para derrotar aquellas reclamaciones que resulten inmeritorias. J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da ed., San Juan, Pubs. JTS, 2011, T. III, pág. 1039.

La Regla 36.3 de Procedimiento Civil de 2009, 32 LPRA Ap. V (2010) (Regla 36.3), establece ciertos requisitos de forma en extremo detallados con los que debe cumplir una solicitud de sentencia sumaria al igual que su oposición. Entre estos se encuentra la obligación de desglosar los hechos que se alega no están en controversia con referencia específica a la prueba admisible que los sustenta.

Conforme a esta normativa procesal, la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. Por el contrario, viene obligada a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente en su solicitud puesto que, de incumplir, corre el riesgo de que se dicte sentencia sumaria en su contra, de proceder en Derecho. Rodríguez García v. UCA, *supra*; Roldán Flores v. M. Cuebas, *supra*; Bové *et al*. v. UBS Financial

Services, 198 DPR 6 (2017); Meléndez González *et al.* v. M. Cuebas, *supra*; SLG Zapata-Rivera v. J.F. Montalvo, *supra*.

En la oposición a una solicitud de sentencia sumaria el promovido debe, como parte de su carga, puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición según exige la Regla 36.3. En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. Roldán Flores v. M. Cuebas, *supra*; Rodríguez Méndez v. Laser Eye, *supra*; Meléndez González *et al.* v. M. Cuebas, *supra*; SLG Zapata-Rivera v. J.F. Montalvo, *supra*; Ramos Pérez v. Univisión, 178 DPR 200 (2010).

Al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia y ser consciente en todo momento que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. Mun. de Añasco v. ASES *et al.*, 188 DPR 307, 327 (2013).

De otra parte, es preciso destacar que el descubrimiento de prueba está íntimamente ligado al proceso de sentencia sumaria. Las alegaciones influirán, tanto en la información específica que los abogados

procurarán indagar en el proceso de descubrimiento de prueba, así como en el mecanismo particular que han de escoger para llevar a cabo esa faena. El trámite de sentencia sumaria presupone que el promovido ha podido concluir el descubrimiento de prueba necesario para responder adecuadamente a la solicitud de sentencia sumaria.[6]

> Disclosures, discovery, and summary judgment are interrelated. […] The claims and defenses made in the case will, in turn, affect the information counsel seeks when reviewing the initial disclosures and pursuing further discovery […]. The material obtained in disclosures and discovery further influences counsel's decisions regarding the making, support, and opposition of summary judgment motions.
>
> Summary judgment often plays a key role in how parties conduct discovery. A defendant that is contemplating making a motion for summary judgment might use discovery to establish key facts as undisputed. Conversely, a plaintiff expecting a motion for summary judgment will use discovery to gather those facts needed to fend off the expected motion. (Escolios omitidos). Moore's Federal Practice, *supra*, Sec. 56.05[2], pág. 56-33.

### i. Reclamaciones nuevas en la moción en oposición a solicitud de sentencia sumaria

En la esfera federal, tanto a nivel de los tribunales de apelaciones como de distrito, existe abundante casuística a los efectos de que una **moción en oposición a una solicitud de sentencia sumaria** sometida a tenor de la Regla 56 de Procedimiento Civil Federal, similar a la

---

[6] De no ser así, la Regla 36.6 de Procedimiento Civil de 2009, 32 LPRA Ap. V (2010), permite solicitarle al tribunal tiempo adicional para procurar la información necesaria para preparar la oposición.

Regla 36 nuestra, **no es el vehículo apropiado para presentar reclamaciones nuevas**, nunca antes aducidas en las alegaciones que constan ante el tribunal.

Así pues, en Am. Fed'n of State, County and Mun. Employees, 717 F.3d 851 (11mo Cir. 2013), el tribunal resolvió que la parte demandante no podía, en su oposición a la solicitud de sentencia sumaria de la parte adversa, presentar por vez primera una reclamación contractual.

De igual manera en Gilmour v. Gates, McDonald and Co., 382 F.3d 1312 (11mo Cir. 2004), se le impidió al demandante insertar una reclamación contractual en su oposición a una solicitud de sentencia sumaria. La opinión advirtió que la demanda exigiendo daños a base de negligencia no proveyó suficiente notificación a la parte demandada concerniente a una reclamación contractual.

En Shanahan v. City of Chicago, 82 F.3d 776 (7mo Cir. 1996), igualmente se rechazó el intento de la parte demandante de enmendar la demanda a través de un escolio incluido en su oposición a una moción de sentencia sumaria. Específicamente, se resolvió que un demandante no puede enmendar su demanda mediante argumentos esbozados en su memorando en oposición a una solicitud de sentencia sumaria.

De manera similar, en Abboud v. County of Onondaga, New York, 341 F.Supp.3d 164 (S.D.N.Y. 2018) se dictaminó que una parte no puede presentar reclamaciones o teorías de responsabilidad nuevas en oposición a una solicitud de

sentencia sumaria. Véanse, además, Miccosukee Tribe of Indians of Fla. v. U.S., 716 F.3d 535 (11mo Cir. 2013); Pickern v. Pier 1 Imports (U.S.), Inc., 457 F.3d 963 (9no Cir. 2006); Tucker v. Union of Needletraders, Indus. and Textile Employees, 407 F.3d 784 (6mo Cir. 2005); Manu v. United States, 323 F.Supp.3d 1346 (S.D. Ala. 2018); SAI v. Transp. Sec. Administration, 315 F.Supp.3d 218 (D.D.C. 2018); Cummings v. City of New York, 302 F.Supp.3d 511 (S.D.N.Y. 2017).

Este principio igualmente se ha aplicado a situaciones en que **es el propio promovente de una sentencia sumaria quien intenta enmendar sus alegaciones a través de su memorando en apoyo a la disposición sumaria del caso.**

En Flintlock Constr. Services, LLC v. Well-Come Holdings, LLC, 710 F.3d 1221 (11mo Cir. 2013), el tribunal amplió el concepto anterior al resolver que un demandante no podía valerse de los argumentos reseñados en su memorando de derecho, ya fuese para apoyar su propia solicitud de sentencia sumaria o como oposición a una solicitud de sentencia sumaria sometida por otra parte en el litigio, para enmendar sus alegaciones.

Asimismo, el tribunal criticó la práctica de los foros primarios de tomar en consideración reclamaciones y defensas expuestas en los memorandos relacionados con solicitudes de sentencia sumaria, aún cuando éstas no surgían de las demandas o de las contestaciones a la demanda que constaban en el expediente judicial. Íd.

Igualmente, en GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244 (11mo Cir. 2012), el tribunal no le permitió a los demandantes incluir hechos adicionales en su solicitud de sentencia sumaria con el fin de corregir ciertas deficiencias críticas en las reclamaciones consignadas en su demanda enmendada. Nuevamente, el tribunal dictaminó que no pueden enmendarse las alegaciones sometidas en un caso a través de aseveraciones y argumentos planteados por vez primera durante el trámite asociado a una solicitud de sentencia sumaria.

### ii. Enmienda a la demanda

Cónsono con lo anterior, en Miccosukee Tribe of Indians v. U.S., *supra*, el tribunal advirtió que, al disponer de una solicitud de sentencia sumaria, los tribunales no pueden desentenderse de las reclamaciones conforme éstas aparecen redactadas en la demanda y actuar como si un demandante tuviese la potestad de enmendar o suplementar sus alegaciones a través de las aseveraciones y argumentos sometidos en oposición a una moción de sentencia sumaria. Reiteró, además, que una vez un demandante se enfrenta a una solicitud de sentencia sumaria, el procedimiento correcto para añadir reclamaciones al litigio es a través de una enmienda a la demanda. Véase, Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286 (11mo Cir. 2006) (en la fase de sentencia sumaria, el vehículo procesal adecuado para esgrimir una reclamación nueva es mediante una enmienda a

la demanda). Véanse, además, Pickern v. Pier 1 Imports (U.S.), Inc., 457 F.3d 963 (9no Cir. 2006); Tucker v. Union of Needletraders, Indus. and Textile Employees, 407 F.3d 784 (6to Cir. 2005); Gilmour v. Gates, McDonald and Co., 382 F.3d 1312 (11mo Cir. 2004).

En Miccosukee Tribe of Indians v. U.S., *supra*, se previno a los jueces de ceder ante la tentación de enmendar las alegaciones por cuenta propia pues, de así hacerlo, se colocarían en una posición insostenible frente a las partes. El Tribunal explicó el razonamiento para su postura de la siguiente forma:

> And it goes without saying that the court is barred from amending a plaintiff's claim. One reason for barring such amendment is that in *sua sponte* amending a plaintiff's claim on summary judgment, the court may create the impression that it has become the plaintiff's advocate – or his worst enemy – depending on what the court does with the claim after amending it. Íd., pág. 559.

Esta premisa está asentada en el principio de notificación adecuada que reviste las alegaciones. Según señalamos anteriormente, las aseveraciones formuladas en una demanda juegan un papel fundamental en el trámite judicial. Éstas van atadas inexorablemente al debido proceso de ley mediante el cual un demandado tiene derecho a conocer las alegaciones en su contra para poder preparar una defensa apropiada en el proceso judicial que afronta.

Acorde lo anterior, en Espinoza v. New York City Dep't of Transp., 304 F.Supp.3d 374 (S.D.N.Y. 2018), se decretó que es improcedente anteponer reclamaciones nuevas por vez

primera en documentos sometidos en oposición a una moción de sentencia sumaria, puesto que este curso de acción impide que se le advierta oportunamente a la parte demandada la naturaleza de la causa de acción propuesta.

De igual forma, en James v. Dependency Legal Group, 253 F.Supp.3d 1077 (S.D. Calif. 2015), el tribunal resolvió que un demandante no puede presentar evidencia que exceda las alegaciones en la demanda con el propósito de evitar que se dicte sentencia sumaria en su contra. En su lugar, es menester que se le solicite permiso al tribunal para enmendar la demanda con el propósito de incluir las reclamaciones nuevas y de este modo brindarle a la parte adversa una notificación apropiada sobre las causas de acción que figuran en su contra.

Por último, en Kennedy v. BMW Fin. Services, N.A., 363 F.Supp.2d 110 (D. Conn. 2005), el tribunal explicó que, dado que el propósito fundamental de la demanda es darle a conocer a los demandados la naturaleza de las causas de acción presentadas en su contra para que puedan defenderse de manera efectiva en el litigio, resulta improcedente que un demandante levante reclamaciones nuevas por primera vez en su oposición a una solicitud de sentencia sumaria.

De manera que, conforme a la doctrina esbozada en la casuística federal, le está vedado a la parte demandante cualquier intento de incorporar reclamaciones nuevas o corregir deficiencias en su demanda una vez se ha sometido una solicitud de sentencia sumaria en el caso. Así, el

procedimiento adecuado en estas circunstancias es solicitar la anuencia del tribunal para enmendar las alegaciones.

## III. DISCUSIÓN

### A. Reclamación de despido constructivo o tácito

En este caso el Tribunal de Apelaciones determinó que el foro primario erró al dictar sentencia sumaria a favor del patrono. Entendió que, debido a que el despido constructivo constituye una modalidad de despido injustificado bajo la Ley Núm. 80, no era necesario que la empleada incluyese en su querella alegaciones específicas sobre actuaciones de su patrono dirigidas a inducir o a forzar su renuncia. De esta forma, concluyó que la reclamación de despido constructivo estaba comprendida en las alegaciones de despido injustificado según descritas en la querella, por lo que existía una controversia de hecho en torno a si la señora León Torres abandonó su trabajo o si se vio presionada a hacerlo.

Ahora bien, según mencionamos anteriormente, cabe destacar que los elementos de una causa de acción por despido sin justa causa y los de un despido constructivo no son idénticos. A pesar de que el despido constructivo está contemplado como una modalidad de la Ley Núm. 80, tiene requisitos particulares adicionales a una causa de acción tradicional de despido sin justa causa. En estos casos específicamente, la reclamación se fundamenta, no en el despido sin justificación, sino en la renuncia

involuntaria del propio empleado que, por ficción de ley, se equipara a un despido para fines del estatuto.

Según explicamos, el propósito de las alegaciones conforme a la Regla 6.1, es alertar al demandado de las reclamaciones que penden en su contra para que pueda proteger sus derechos adecuadamente. Por lo tanto, a pesar de que el despido tácito está subsumido en una causa de despido injustificado, el patrono tiene derecho a conocer los detalles relevantes de la alegada destitución para estar en posición de preparar una defensa que responda acertadamente y esté acorde con ese tipo de reclamación.

A tono con lo anterior, lo relevante en este recurso **no** es si el despido tácito cabe dentro de la definición de despido injustificado según dispuso el Tribunal de Apelaciones. Más bien, la interrogante a responder es si la reclamación, según reseñada en la querella, de alguna manera previno al patrono que, ya fuese la renuncia o el abandono del trabajo por parte de la señora León Torres, fue provocado por un ambiente laboral intolerable.

En esa línea, la pregunta obligada en este caso es si, conforme a las aseveraciones de la querella, podemos inferir una reclamación por despido constructivo. Específicamente, evaluar ¿qué conducta se imputó como fundamento para que la empleada pudiera exigir un remedio por despido tácito en contra de su patrono?

Con lo anterior en mente, procedemos a examinar los hechos consignados en la querella a base de los cuales el patrono optó por solicitar que se dictase sentencia sumaria a su favor.

La señora León Torres relató que "el 30 de mayo de 2016, fue despedida ilegalmente de su empleo en la oficina de contabilidad [del patrono]". *Querella*, párr. 4. Añadió que comenzó a laborar en el 1973 por tiempo indeterminado como asistente de contabilidad, no tenía funciones de supervisión, y cumplió responsablemente con sus obligaciones sin que se le amonestara en ningún momento. En lo concerniente a su causa de acción, se limitó a exponer que "[e]l despido […] **fue sin justa causa, [y] […] por mero capricho del patrono sin razón relacionada con el buen y normal funcionamiento de la empresa**" (Énfasis suplido). *Querella*, párr. 20. A causa de ello "fue **despedida injustificadamente de su empleo en contravención a la Ley 80**". (Énfasis suplido). *Querella*, párr. 21.

Un análisis minucioso de estas expresiones demuestra inequívocamente que la querella meramente sugiere una causa de acción de despido sin razón válida en ley. Es decir, apunta a un acto deliberado del patrono decretando la destitución de la empleada de manera arbitraria. Resulta indiscutible, que lo que se impugna en la querella es simple y sencillamente la alegada decisión del patrono de despedirla sin justificación legal. No se menciona

ninguno de los supuestos establecidos como requisito para aducir una causa de acción por despido constructivo. El documento no da margen a inferir una situación laboral incómoda que le resultaba insostenible a la señora León Torres ni comportamiento del patrono que le forzara a dimitir. La esencia de la reclamación, según planteada, reside en que el 30 de mayo de 2016 fue despedida sin razón aparente a pesar de haber laborado satisfactoriamente en la oficina del patrono por espacio de 43 años.

En resumen, no se consignó en la querella hecho alguno que siquiera insinuase un despido constructivo de manera tal que el patrono pudiese enfrentar ese tipo de reclamación adecuadamente. Consiguientemente, el patrono no tenía forma de esgrimir defensas oponibles a un supuesto despido constructivo cuando tal reclamación no se desprende de la alegación inicial de la señora León Torres.

Ratificar lo autorizado por el Tribunal de Apelaciones ante el escenario fáctico anterior socava el propósito inherente de la Regla 6 de Procedimiento Civil. Según establece este postulado, a pesar de no ser necesario que cada reclamación esté expresada en detalle, sí se exige, como mínimo, que las aseveraciones consignadas por el demandante permitan a las partes contrarias organizar su estrategia de defensa y adaptar sus respectivos procesos

de descubrimiento de prueba de manera tal que puedan elaborar una defensa adecuada en el caso.

Decretamos, por lo tanto, que cuando se presenten reclamaciones de este tipo, es indispensable que, de algún modo, se advierta en la querella que el empleado decidió renunciar o abandonar su trabajo debido a que las circunstancias imperantes se tornaron intolerables y no le permitían continuar cumpliendo con sus obligaciones laborales. Resulta esencial que se detallen hechos suficientes que prevengan al demandado que la acción está fundamentada en esta modalidad específica de la Ley Núm. 80.

Resolver lo contrario presupone que un patrono tendría que defenderse de una reclamación que meramente indica que el empleado fue despedido sin justa causa sin conocer que, en realidad, se trata de una alegada renuncia forzada a causa de las condiciones en el empleo. Consecuentemente, no se le estaría brindando al patrono notificación – aunque fuese de manera general – del tipo o naturaleza de la reclamación correspondiente para poder elaborar una defensa adecuada.

A la luz de las consideraciones y principios antes expuestos, en lo que respecta a este caso, independientemente de que el concepto de despido injustificado provisto en la Ley Núm. 80 abarque un despido tácito, la realidad es que no se desprende tal

reclamación de la querella. Erró, por lo tanto, el Tribunal de Apelaciones al concluir lo contrario.

## B. Enmienda a la querella mediante oposición a solicitud de sentencia sumaria

Según adelantamos, nuestro Derecho admite enmiendas a una querella en tramites iniciados conforme a las disposiciones de la Ley Núm. 2. No obstante, esta opción está condicionada a que el promovente utilice el **vehículo procesal adecuado** para ello y cumpla, además, con las formalidades aplicables.

Acorde con lo anterior, resulta pertinente resolver si le era permitido a la empleada utilizar su oposición a la solicitud de sentencia sumaria como método para enmendar la querella y de este modo adicionar una reclamación de despido constructivo.

En este caso el Tribunal de Primera Instancia rechazó los intentos de la señora León Torres de utilizar los documentos presentados en oposición a la sentencia sumaria para traer, por primera vez en el pleito, lo que a juicio del juez constituía una reclamación nueva de despido tácito. No obstante, el Tribunal de Apelaciones revocó esta determinación y le permitió a la señora León Torres proseguir con su causal de despido constructivo por entender que esta reclamación estaba comprendida dentro de la acción de despido injustificado consignada en su querella.

Un análisis del trayecto procesal de este litigio revela que, en efecto, la señora León Torres pretendió enmendar *de facto* las alegaciones de su querella a través de las aseveraciones y argumentos vertidos en su oposición a la solicitud de sentencia sumaria, obviando de este modo los requisitos taxativamente impuestos por la Regla 13. Nos explicamos.

La moción sometida por la empleada **no** iba dirigida a sustentar las alegaciones de la querella, sino más bien procuraba añadir asuntos nuevos ausentes en su reclamación inicial. Es decir, la señora León Torres esperó hasta el momento de reaccionar a la solicitud de sentencia sumaria de su patrono para aducir, **por vez primera**, circunstancias constitutivas de un despido constructivo.

La jurisprudencia federal previamente descrita consistentemente ha rechazado los intentos de las partes en un pleito de eludir el enmendar formalmente sus alegaciones para enfrentar mociones de sentencia sumaria sometidas conforme a las disposiciones de la Regla 56 de Procedimiento Civil Federal. Nos parece acertado este enfoque para atender la situación procesal que tenemos ante nuestra consideración en el día de hoy.

Por lo tanto, no puede la parte que se opone a una solicitud de sentencia sumaria traer en su oposición, de manera colateral, defensas o reclamaciones nuevas ajenas a los hechos consignados en sus alegaciones según consten en el expediente del tribunal al momento en que se sometió la

moción dispositiva en cuestión. El vehículo procesal adecuado en estos casos es solicitar la autorización del tribunal para enmendar las alegaciones correspondientes y que sea el foro judicial quien resuelva si la petición se ajusta o no a los parámetros dispuestos en la Regla 13.

Así pues, un demandante que se confronta con la solicitud de sentencia sumaria de su oponente y se percata de omisiones graves en su demanda no puede valerse del mecanismo de oposición a la sentencia sumaria para corregirlas.

Por consiguiente, si la señora León Torres deseaba evitar que se dictase sentencia sumaria en su contra a base de las alegaciones consignadas a ese momento en la querella, venía obligada a procurar la autorización judicial para someter una querella enmendada y, de este modo, incluir aseveraciones vinculadas a su alegado despido constructivo. Conforme a ello, de interesar ampliar la base de su reclamación y agregar una acción por despido tácito, era indispensable que obtuviese el consentimiento previo del tribunal para poder entonces modificar sus alegaciones a esos efectos.[7]

De lo contrario, ¿de qué manera se suponía que el patrono retara la nueva versión de los hechos traída por la empleada en su oposición a la solicitud de sentencia

---

[7]    Claro está, ello condicionado a que se cumplieran los requisitos de la Regla 13 de Procedimiento Civil de 2009, 32 LPRA Ap. V (2010), y sujeto a que el tribunal sopesara convertir el trámite sumario iniciado bajo la Ley Núm. 2 en uno ordinario.  Véase Vizcarrondo Morales v. MVM, Inc., 174 DPR 921 (2008); Berríos v. González et al., 151 DPR 327 (2000).

sumaria, la cual ameritaba defensas incorporadas, como regla general, en la contestación a la querella? No podemos pasar por alto que, al estar a cargo de redactar su demanda, el demandante tiene el control de sus reclamaciones y consiguientemente, escoge cómo entiende es la mejor forma de precisar sus causas de acción. En este caso específico, las razones para la señora León Torres invocar el alegado despido constructivo existían al momento en que ésta presentó la querella y eran de su personal conocimiento.

El tribunal no puede avalar el que un demandado sea sorprendido con una nueva causa de acción durante el transcurso de un caso sin atención a los rigores de nuestro régimen procesal. Por el contrario, es obligación de todo juez vigilar que a cada demandado se le brinde una oportunidad apropiada para prepararse y defenderse oportunamente de las reclamaciones interpuestas en su contra como parte de su derecho al debido proceso de ley.

Cabe señalar, que la necesidad de una advertencia formal y suficiente con relación a los hechos a base de los cuales se formula una reclamación impacta al demandado en varios niveles. A esos efectos, la demanda enmarca la causa de acción alegada y frente a la cual el demandado elaborará su estrategia, dirigirá su investigación, conducirá el descubrimiento de prueba, preparará su defensa y de entenderlo oportuno, optará por someter una moción dispositiva.

Así pues, la defensa del señor Rivera Lebrón en este caso estuvo delimitada por las indicaciones de un alegado despido sin causa efectuado el 30 de mayo de 2016, según aparecen descritas en la querella. Conforme a lo anterior, preparó su contestación a la querella, sopesó la necesidad de llevar a cabo descubrimiento de prueba y, finalmente, sometió una moción de sentencia sumaria basada en esas aserciones.

Por último, no podemos pasar por alto que el impacto de la determinación del Tribunal de Apelaciones en la capacidad del patrono de preparar su defensa se agrava aún más en el contexto de un caso tramitado bajo la Ley Núm. 2, como el que nos ocupa. Ello, debido a las serias limitaciones procesales impuestas por el mencionado estatuto, según aludimos anteriormente en este escrito.

En consecuencia, no le estaba permitido a la señora León Torres utilizar su oposición a la solicitud de sentencia sumaria del patrono para incorporar por vez primera una reclamación de despido tácito.

### C. Requisitos de la Regla 36.3

Conforme indicamos anteriormente, el mecanismo de sentencia sumaria sirve para verificar si existen controversias sustanciales de hecho en torno a las alegaciones de la demanda y, de este modo, depurar los asuntos pendientes ante los tribunales.

Por lo tanto, al preparar una solicitud de sentencia sumaria, el promovente parte de las alegaciones según

fueron formuladas en la demanda que consta en el expediente del caso al momento en que se somete la moción a la consideración del tribunal. De esta forma, los requerimientos procesales dispuestos en la Regla 36.3 se elaborarán en función de las aseveraciones plasmadas en la alegación de la que se pretende disponer sumariamente y que, de acuerdo con el expediente, rigen los procesos.

Así pues, cuando la parte promovente sea el demandado, éste redactará los hechos que reputa como no controvertidos, presentará la prueba que los sostiene, y argumentará el derecho aplicable, conforme a la versión de los eventos aducida en su contra en la demanda vigente a la fecha en que presentó su moción.

De igual manera, la oposición a una solicitud de sentencia sumaria deberá circunscribirse a lo consignado en las alegaciones que se abordan en la solicitud de disposición sumaria y que consten en el récord judicial.

Por último, al disponer de una solicitud de sentencia sumaria, el juez a cargo del caso deberá ceñirse única y exclusivamente a las reclamaciones vertidas en el expediente del caso al momento en que se presenta la moción dispositiva ante el tribunal.

Acorde con lo anterior, la petición de sentencia sumaria en este caso iba dirigida a refutar la versión de la señora León Torres concerniente a su destitución, según consignada en la querella. En este documento la empleada esencialmente alegó que el 30 de mayo de 2016 se le

despidió ilegalmente de su empleo, sin justa causa para ello y por mero capricho del patrono. En atención a ello, y conforme al trámite dispuesto en la Regla 36.3, el patrono propuso una serie de hechos como no controvertidos, debidamente sustentados, dirigidos a establecer que no hubo tal despido, sino más bien una renuncia. Es decir, planteó un abandono voluntario del trabajo por parte de la señora León Torres luego de: expirado el periodo de ausencia justificado por las tres certificaciones médicas sometidas, enviar a un primo a recoger sus pertenencias y aceptar el cheque de su liquidación.

Por su parte, la señora León Torres obvió el proceso preceptuado taxativamente en la Regla 36 para oponerse a una solicitud de sentencia sumaria. Es decir, no refutó individualmente cada uno de los hechos propuestos en la solicitud del patrono referentes al abandono voluntario del trabajo. En su lugar, sometió los suyos propios exponiendo una versión nueva sobre la forma y manera en que concluyó su relación laboral con el patrono. Es decir, planteó por primera vez detalles sobre un supuesto despido constructivo apoyados en su declaración jurada. De esta forma, la empleada intentó convencer al tribunal de la existencia de una alegada controversia de hechos esenciales respecto a las circunstancias bajo las cuales alegadamente cesó de laborar en la empresa del señor Rivera Lebrón.

La pretensión de la señora León Torres de modificar las aseveraciones de su querella a través de esta maniobra procesal resulta evidente. Ello, debido a que las afirmaciones traídas en oposición a la solicitud de sentencia sumaria resultan inconsistentes con la versión reseñada en la querella sobre las circunstancias que motivaron su partida del trabajo.

Como resultado de lo anterior, la empleada no logró rebatir los hechos propuestos por el patrono mediante una oposición debidamente fundamentada que cumpliera con los parámetros dispuestos en la Regla 36.3. Erróneamente intentó refutarlos utilizando una declaración jurada que ofrecía _nuevas_ razones para su alegado despido.

Consiguientemente, la señora León Torres hizo caso omiso al trámite provisto en la Regla 36.3, asumiendo de este modo las inevitables consecuencias procesales fijadas en esta disposición procesal. Es decir, al no responder conforme a la metodología diseñada para ello, aceptó de manera implícita los hechos propuestos por el patrono en su moción.

En consonancia con lo anterior, concluimos que erró el Tribunal de Apelaciones al resolver que la empleada pudo demostrar que existía una controversia de hechos sobre supuestas alegaciones de despido constructivo que impedían que se dictara sentencia sumaria a favor del patrono en este caso.

**IV. CONCLUSIÓN**

Por los fundamentos antes expuestos, se revoca la *Sentencia* del Tribunal de Apelaciones de 28 de febrero de 2018 y se reinstala la *Sentencia* del Tribunal de Primera Instancia de 31 de agosto de 2017.

Se dictará Sentencia de conformidad.

ROBERTO FELIBERTI CINTRÓN
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Margarita León Torres<br><br>Recurrida<br><br>v.<br><br>Erasmo Rivera Lebrón<br><br>Peticionario | CC-2018-311 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 28 de febrero de 2020.

Por los fundamentos expuestos en la *Opinión* que antecede, la cual se hace formar parte íntegra de la presente *Sentencia*, revocamos la *Sentencia* del Tribunal de Apelaciones emitida el 28 de febrero de 2018 y se reinstala la *Sentencia* del Tribunal de Primera Instancia de 31 de agosto de 2017.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió una Opinión de conformidad en parte y disidente en parte. La Juez Asociada señora Rodríguez Rodríguez no intervino.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Margarita León Torres<br><br>Recurrida<br><br>v.<br><br>Erasmo Rivera Lebrón<br><br>Peticionario | CC-2018-0311 | Certiorari |

Opinión de conformidad en parte y disidente en parte emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ.

San Juan, Puerto Rico, a 28 de febrero de 2020.

Hoy, este Tribunal resuelve acertadamente que, en el contexto de un procedimiento sumario en virtud de la Ley Núm. 2, _infra_, los empleados y empleadas tienen la potestad de enmendar la querella presentada originalmente. Al aplicar supletoriamente la Regla 13.1 de Procedimiento Civil, _infra_, se pauta que los obreros y las obreras querellantes podrán presentar causas de acciones nuevas, aclarar las alegaciones presentadas y abundar sobre los planteamientos originales cuando la justicia así lo requiera. En estos casos, sólo procederá proveerle un término al patrono querellado para que éste tenga la oportunidad de responder a las alegaciones nuevas. En virtud de nuestro deber de interpretar la Ley Núm. 2, _infra_, liberalmente a favor de los empleados y las empleadas, ello es el resultado más razonable y cónsono con el interés público de que los trabajadores y las

trabajadoras acuden a los tribunales a vindicar sus derechos laborales.

No obstante, el dictamen final de la Opinión mayoritaria es contradictorio con lo antes expuesto, toda vez que despacha automáticamente las alegaciones de una empleada querellante bajo el fundamento de que las presentó por primera vez en una oposición a una moción en solicitud de que se dictara sentencia sumaria. Así, se niega a aplicar la Regla 13.1 de Procedimiento Civil, infra, a este contexto y pauta que los foros judiciales están **impedidos** de atender alegaciones y reclamos presentados por los empleados y las empleadas en otras etapas del pleito. De este modo, se incurre en un análisis autómata y formalista que deja desprovista de todo remedio a una persona que pudo haber sido despedida injustificadamente de su empleo.

Ante las lagunas que genera esta controversia, se debió considerar la política pública y la naturaleza de los estatutos laborales de nuestro ordenamiento que exigen la interpretación más favorable a los empleados y las empleadas. Por tanto, ante una situación como ésta, los foros judiciales deben considerar las alegaciones presentadas en la moción como una solicitud para enmendar la querella. Así, los tribunales podrían ejercer su discreción, estudiar las circunstancias de cada caso y determinar si la concesión de tal remedio causaría un perjuicio indebido al patrono querellante. De esta

manera, se procuraría un balance de intereses en aras de lograr el resultado más justo para ambas partes.

A pesar de lo anterior, la Opinión mayoritaria opta por resolver que los tribunales deben despachar automáticamente todo planteamiento novel presentado en la etapa de sentencia sumaria. Por entender que esta norma no tiene cabida en nuestro ordenamiento jurídico laboral y es contrario al esquema procesal civil que se incorpora por analogía, respetuosamente disiento del dictamen mayoritario.

Debido a que el trasfondo de la controversia de epígrafe está adecuadamente reseñado en la Opinión mayoritaria, procedo a exponer las razones de mi disenso.

**I.**

**A.**

Como es conocido, nuestro ordenamiento jurídico es pionero en el ámbito laboral, pues provee protecciones abarcadoras en cuanto a los derechos de los trabajadores y las trabajadoras. Ello "[e]s así, tanto por lo que significa a nivel individual en la vida diaria de decenas de miles de puertorriqueños y puertorriqueñas, como por el beneficio colectivo que se genera cuando a través del esfuerzo ofrecemos calidad de vida a nuestro pueblo y desarrollo social y económico para nuestro país". Rivera Figueroa v. The Fuller Brush Co., 180 DPR 894, 902 (2011). A la luz de lo anterior, la Asamblea Legislativa ha aprobado una serie de estatutos con el

propósito de proteger la seguridad del empleo. Entre éstas, se encuentra la Ley de indemnización por despido sin justa causa, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a et seq. (ed. 2017) (Ley Núm. 80).[8]

Con el fin de desalentar los despidos injustificados, la Ley Núm. 80 exige que todo despido de algún empleado o empleada sea fundamentado por justa causa. Art. 2 de la Ley Núm. 80, supra, 29 LPRA sec. 185b. Si, por el contrario, un patrono despide a un empleado o empleada sin justa causa, éste debe indemnizarle conforme a lo dispuesto en el Art. 1 de la Ley Núm. 80, supra, 29 LPRA sec. 185a. En su acepción ordinaria, esta indemnización es conocida como "mesada" y su cuantía depende del tiempo durante el cual el empleado o la empleada ocupó su puesto y del sueldo que devengaba. Íd.; Whittenburg v. Col. Ntra. Sra. Del Carmen, 182 DPR 937, 950 (2011).

Lo anterior materializa el propósito coercitivo de la Ley Núm. 80, pues sanciona a los patronos que despidan injustificadamente a trabajadores o trabajadoras. González Méndez v. Acción Social et al., 196 DPR 213, 229 (2016). De igual modo, demuestra su propósito

---

[8]La Ley de indemnización por despido sin justa causa, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a et seq. (ed. 2017), fue posteriormente enmendada por la Ley de Transformación y Flexibilidad Laboral, Ley Núm. 4 de 26 de enero de 2017, 29 LPRA sec. 121 et seq. Sin embargo, los hechos ante nuestra consideración versan sobre una empleada que fue contratada con anterioridad a la vigencia de esta ley, por lo que no abundaremos en la misma en esta Opinión. Véase, Ley de Transformación y Flexibilidad Laboral, supra, 29 LPRA sec. 121a.

reparador al proveer "remedios justicieros y consubstanciales con los daños que puede haberle causado a un cesanteado un despido injustificado". Jusino et als. v. Walgreens, 155 DPR 560, 571 (2001).

Asimismo, la Ley Núm. 80 establece una presunción de que todo despido es injustificado. Art. 1 de la Ley Núm. 80, supra, 29 LPRA sec. 185a. En consecuencia, los patronos tienen el peso de la prueba de demostrar que el despido de un trabajador o una trabajadora fue por justa causa. Báez García v. Cooper Labs., Inc., 120 DPR 145, 152 (1987). Sin embargo, para que se active tal presunción, todo empleado o empleada que presente una causa de acción por despido injustificado debe probar que, en efecto, fue despedido. Rivera Figueroa v. The Fuller Brush Co., supra, pág. 907.

A esos fines, la Ley Núm. 80 contempla una definición del término "despido" bastante amplia. Así, provee que un despido puede ser: (1) la cesantía de un empleo; (2) la suspensión indefinida o por un término que se exceda de tres (3) meses, o (3) **"la renuncia del empleo motivada por actuaciones del patrono dirigidas a inducirlo o forzarlo a renunciar tales como imponerle o intentar imponerle condiciones de trabajo más onerosas, reducirle el salario, rebajarlo en categoría o someterlo a vejámenes o humillaciones de hecho o de palabra"**. (Énfasis suplido). Art. 5 de la Ley Núm. 80, supra, 29 LPRA sec. 185e. Esta última, se refiere a la modalidad de despido constructivo o tácito.

Nuestro ordenamiento contempla la modalidad del despido constructivo para proteger a los trabajadores y las trabajadoras que se ven forzados a renunciar a su empleo por la imposición de condiciones onerosas en sus labores. Así, hemos definido el despido constructivo como "[l]os actos voluntarios e injustificados de un patrono encaminados a obligar al empleado a dejar su cargo". Vélez de Reilova v. R. Palmer Bros., Inc., 94 DPR 175, 178 (1967). Debido a lo anterior, constituirá un despido constructivo cuando abandonar el empleo es la única alternativa razonable para el empleado o empleada. Íd.

A la luz de lo anterior, este Tribunal resolvió que toda persona que dirija una causa de acción de despido injustificado en su modalidad de despido constructivo debe probar inicialmente que, en efecto, fue obligada a abandonar su empleo por las condiciones onerosas impuestas por su patrono. Rivera Figueroa v. The Fuller Brush Co., supra, págs. 917-918. Una vez la persona pruebe ese elemento de umbral, se activa la presunción de despido injustificado y le corresponderá al patrono demostrar que el despido fue fundamentado en justa causa. Íd., pág. 917.

Aclarado el derecho sustantivo en torno a las causas de acción de despido constructivo, pasemos a explicar las normas procesales aplicables al caso ante nos.

**B.**

En virtud de la política pública a favor de la protección de los derechos de nuestros trabajadores y trabajadoras, la Asamblea Legislativa aprobó la Ley de procedimiento sumario de reclamaciones laborales, Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118 et seq. (Ley Núm. 2). La Ley Núm. 2 tuvo como propósito viabilizar que las reclamaciones de obreros y obreras en contra de sus patronos se tramitaran sumariamente. Rivera v. Insular Wire Products Corp., 140 DPR 912, 921 (1996). Lo anterior responde al gran interés público de que los trabajadores y las trabajadoras tengan un acceso adecuado a la Rama Judicial para vindicar sus derechos. Particularmente, ante la realidad de que éstos se encuentran tradicionalmente en una posición desventajada económicamente ante un patrono.

Por tanto, la Ley Núm. 2 provee una serie de medidas que agilizan y facilitan el trámite de una querella presentada por un obrero u obrera, entre éstas, la aplicación de términos cortos para la contestación de la querella, la exención en el pago de aranceles, la limitación de los mecanismos de descubrimiento de prueba, la garantía de que no se impondrán costas contra el empleado o empleada que no prevalezca en su reclamación, entre otras. Secs. 1, 3 y 15 de la Ley Núm. 2, supra, 32 LPRA secs. 3118, 3120 y 3132. Véase, Rivera v. Insular Wire Products Corp., supra, págs. 923-

924; E. J. Mendoza Méndez, <u>Procedimiento Sumario Laboral</u>, 2015, págs. 73-75.

De igual modo, amparados en la naturaleza expedita de la Ley Núm. 2, recientemente dictaminamos que las determinaciones interlocutorias emitidas por el foro primario no podrán ser sujetas a reconsideración. <u>Medina Nazario v. McNeil Healthcare LLC</u>, 194 DPR 723, 736 (2016). Similarmente, resolvimos que las sentencias finales tampoco pueden impugnarse mediante el recurso de reconsideración. <u>Patiño Chirino v. Parador Villa Antonio,</u> 196 DPR 439, 450 (2016).

Es menester destacar que, aunque sin duda este estatuto protege y salvaguarda los derechos de los obreros y las obreras, el mismo no deja a los patronos querellados desprovistos de su debido proceso de ley. <u>León v. Rest. El Tropical</u>, 154 DPR 249, 254 (2001). Al contrario, la Ley Núm. 2 facilita la defensa adecuada de los patronos al reconocerle los siguientes derechos: notificación de la querella, citación, oportunidad para contestar la querella, vista pública, oportunidad de presentar prueba a su favor y de contrainterrogar a los y las testigos de la parte contraria, y derecho a apelar. <u>Landrum Mills Corp. v. Tribunal Superior</u>, 92 DPR 689, 692 (1965).

Ahora bien, en virtud de la política pública y de los propósitos de la Ley Núm. 2, en repetidas ocasiones hemos enfatizado que ésta debe siempre interpretarse de manera liberal y favorable al empleado. <u>León v. Rest. El</u>

Tropical, supra; Rodríguez v. Syntex P.R., Inc., 148 DPR 604, 612 (1999). Ello necesariamente implica que toda duda en torno al texto de la ley deberá resolverse a favor del obrero u obrera.

### C.

Toda causa de acción de naturaleza laboral mediante el procedimiento sumario de la Ley Núm. 2 comienza con la presentación de una querella ante el Tribunal de Primera Instancia. Sec. 1 de la Ley Núm. 2, supra, 32 LPRA sec. 3118. Una vez recibida tal querella, el secretario o la secretaria del foro primario tramitará la notificación de ésta al patrono. Sec. 3 de la Ley Núm. 2, supra, 32 LPRA sec. 3120. Así, el patrono querellado tendrá un término de diez (10) días, si se presentó la notificación en el distrito judicial en la que se promueve la acción, o de quince (15) días, en los demás casos, para contestar la querella. Íd.

Ahora bien, el estatuto provee que, en su contestación, "[e]l querellado deberá hacer una sola alegación responsiva en la cual deberá incluir todas sus defensas y objeciones, entendiéndose que **renuncia a todas las defensas u objeciones que no incluya en dicha alegación responsiva**". (Énfasis suplido). Íd. Debido a lo anterior, este Tribunal ha resuelto que un patrono querellado sólo puede enmendar su contestación a la querella con "el propósito u objetivo de clarificar o ampliar, en beneficio de la pronta solución del caso, una defensa afirmativa previamente interpuesta en la

contestación". <u>Srio. del Trabajo v. J.C. Penney Co., Inc.</u>, 119 DPR 660, 669 (1987). En consecuencia, el patrono no podrá presentar nuevas defensas afirmativas a través de una enmienda a su contestación. Íd.; <u>Izagas Santos v. Family Drug Center</u>, 182 DPR 463, 481 (2011).

Por otra parte, la Ley Núm. 2 es silente en torno al derecho de un empleado o una empleada a enmendar su querella. Ante este vacío, la Opinión mayoritaria acude supletoriamente a la Regla 13 de Procedimiento Civil, 32 LPRA Ap. V, para atender esta interrogante. Lo anterior, pues la Ley Núm. 2 provee que podrán aplicar supletoriamente las Reglas de Procedimiento Civil en todo asunto que no esté en contravención con los postulados de la propia ley sumaria. Sec. 3 de la Ley Núm. 2, <u>supra</u>, 32 LPRA sec. 3120.

Particularmente, la Regla 13.1 de Procedimiento Civil, 32 LPRA Ap. V, regula el procedimiento a seguir para enmendar una alegación. La Regla 13.1 permite que una parte enmiende sus alegaciones "cuando por alguna razón válida en derecho ha omitido algo en éstas". <u>Dist. Unidos Gas v. Sucn. Declet Jiménez</u>, 196 DPR 96, 117 (2016). Entre estas razones, una enmienda a una alegación puede servir para abundar en las alegaciones presentadas originalmente, para ampliar las causas de acción expuestas en una demanda, o para añadir una o más causas de acción. <u>Ortiz Díaz v. R. & R. Motors Sales Corp.</u>, 131 DPR 829, 837 (1992).

Para ello, la Regla 13.1 dispone que una parte podrá enmendar una alegación sin la necesidad de solicitar autorización del tribunal si presenta tal enmienda antes de que se le notifique una alegación responsiva. En caso de que la alegación no admita alegación responsiva y el pleito no haya sido señalado para juicio, ésta podrá enmendarse dentro de los veinte (20) días de haber sido notificada. En cualquier otro escenario, la Regla 13.1 establece que la parte que interese enmendar su alegación tendrá que solicitar la autorización correspondiente al tribunal o deberá mediar el consentimiento escrito por la parte contraria. Colón Rivera v. Wyeth Pharm., 184 DPR 184, 198 (2012).

En los casos en que sea necesaria la autorización del tribunal para enmendar una alegación, la Regla 13.1 instruye que esta solicitud "se concederá **liberalmente cuando la justicia así lo requiera**". (Énfasis suplido). Regla 13.1 de Procedimiento Civil, 32 LPRA Ap. V. Ciertamente, aunque tal liberalidad no es infinita, la Regla 13.1 **favorece que las enmiendas a las alegaciones sean concedidas**. J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Pubs. J.T.S., 2000, T. 2, pág. 592. Por tanto, hemos resuelto que el **mero paso del tiempo no debe servir como impedimento** para que el tribunal permita la enmienda solicitada. S.L.G. Sierra v. Rodríguez, 163 DPR 738, 748 (2005). Consecuentemente, hemos avalado enmiendas a alegaciones, aunque el procedimiento judicial se encuentre en **etapas avanzadas.**

Íd., págs. 748-749. Incluso, el tratadista José A. Cuevas Segarra señala que los cambios en la teoría original y la adición de nuevas reclamaciones no debe ser impedimento para denegar una solicitud de enmienda a las alegaciones. Cuevas Segarra, op. cit., pág. 594. Lo anterior, en consideración a la firme política pública de que las controversias se resuelvan en sus méritos y de brindarle a todo litigante su día en corte.

Por tanto, ante una solicitud de enmienda a las alegaciones, los tribunales en su **discreción** deben evaluar **liberalmente** una serie de factores, entre éstos, el momento en que se solicita, el impacto que tendría en la pronta adjudicación de la controversia, la razón atribuible a dicha demora, el perjuicio que causaría a la otra parte, así como los méritos intrínsecos de la defensa que tardíamente se plantea. Epifanio Vidal, Inc. v. Suro, 103 DPR 793, 796 (1975). En ese análisis, "[e]l factor que resulta de mayor relevancia al momento de evaluar una solicitud de autorización para enmendar las alegaciones es el **perjuicio** que puede causarse a la parte contraria". (Énfasis suplido). S.L.G. Font Bardón v. Mini-Warehouse, supra. En consecuencia, la discreción de los foros judiciales será guiada primordialmente por un análisis del perjuicio que podrá causar la enmienda a la otra parte. Cuevas Segarra, op. cit., pág. 592. Véase, S.L.G. Sierra v. Rodríguez, supra, pág. 749; S.L.G. Font Bardón v. Mini-Warehouse, 179 DPR 322, 335 (2010).

Ante este cuadro, en el contexto laboral, hemos concluido que la Regla 13.1 es compatible con el procedimiento sumario dispuesto en la Ley Núm. 2. En Matos Velázquez v. Proctor Manufacturing Corp., 91 DPR 45 (1964), este Tribunal determinó que "[n]ingún conflicto existe entre esta Regla 13.1 que presupone alegaciones ya hechas y lo dispuesto en la Sec. 3 de la Ley Núm. 2 que se refiere al modo de alegar distinto en este tipo de acciones judiciales". Íd., pág. 50. Véase, Vélez Cortés v. Baxter, 179 DPR 455, 464-465 (2010); Díaz v. Hotel Miramar Corp., 103 DPR 314, 321-322 (1975). Así lo hemos resuelto, pues "[e]nmendar las alegaciones de la querella original es un movimiento procesal que no está en conflicto con el carácter sumario del proceso". Mendoza Méndez, op. cit., pág. 127.

A la luz de lo anterior, hoy se pauta correctamente que los empleados y las empleadas tienen la facultad de enmendar las alegaciones presentadas originalmente en virtud de la Regla 13.1. Cuando sea necesaria la autorización del tribunal para ello, los foros judiciales ejercerán un estudio de las circunstancias particulares de cada caso y del perjuicio que podría causar la enmienda al patrono querellado. De autorizar la enmienda, solo procederá proveer un término al patrono querellado para expresarse en torno a las alegaciones enmendadas. Así lo adelantó este Tribunal en

Marín v. Fastening Systems, Inc., 142 DPR 499 (1997), al

disponer lo siguiente:

Una enmienda a la querella no le brinda al querellado, como concluye el Tribunal de Circuito de Apelaciones en este caso, una nueva oportunidad para contestar la querella en su totalidad y levantar todas las defensas afirmativas que tenga. A lo único que tiene derecho el querellado al contestar la querella enmendada, es a levantar las defensas nuevas que surgen como consecuencia de las enmiendas. Íd., pág. 510.

Asimismo, indistintamente de lo dispuesto por la

Regla 13.1, al tomar en consideración la naturaleza y

los propósitos de la Ley Núm. 2, el referido

procedimiento sumario debe permitir que los empleados y

las empleadas enmienden sus querellas con los propósitos

antes descritos. No hay fundamento jurídico alguno que

impida tal mecanismo en un procedimiento tramitado

mediante la Ley Núm. 2. El estatuto especial está

diseñado para promover y facilitar que los trabajadores

y las trabajadoras accedan a los tribunales en la

vindicación de sus derechos. Por tanto, interpretar lo

contrario obstaculizaría dicho acceso mediante trabas

procesales innecesarias. En consecuencia, la

interpretación más razonable y cónsona con los

propósitos de la Ley Núm. 2 es permitir la incorporación

de tal mecanismo.

Una vez explicada la norma en torno a las enmiendas a

las alegaciones y su aplicación a un procedimiento de

Ley Núm. 2, pasemos a evaluar su aplicación a las

circunstancias particulares de este caso.

**II.**

Como expusimos anteriormente, el caso ante nuestra consideración nos exige resolver si un empleado o una empleada puede, mediante una oposición a una moción de sentencia sumaria, presentar alegaciones nuevas y distintas a las presentadas originalmente en su querella. Ciertamente, ello no es el escenario ideal, pues todo litigante debe esforzarse para que no sea necesario presentar alegaciones y fundamentos nuevos en la etapa de sentencia sumaria. Sin embargo, el mero hecho de que se presenten unas alegaciones nuevas en una moción de sentencia sumaria o en una contestación a una sentencia sumaria no debe ameritar su despacho automático.

Al contrario, a la luz de la normativa antes descrita sobre enmiendas a las alegaciones en el contexto de un procedimiento sumario de Ley Núm. 2, procedería considerar dichos fundamentos y alegaciones nuevas como una solicitud para enmendar las alegaciones. Al aplicar supletoriamente la Regla 13.1, los tribunales tendrían la facultad de ejercer su discreción y de auscultar las circunstancias particulares de cada caso para así determinar si se deben admitir las alegaciones presentadas. Lo anterior cobra aún más importancia en un procedimiento laboral, pues el Estado tiene un interés legítimo de que los trabajadores y trabajadoras tengan su día en corte.

No obstante, como pudo observarse, la Opinión mayoritaria recurre a jurisprudencia federal y estatal

de los Estados Unidos para pautar que ello no es permisible. Ciertamente, varios Circuitos de la Corte de Apelaciones de los Estados Unidos han interpretado que las personas litigantes están impedidas de presentar alegaciones nuevas en una oposición a una moción de sentencia sumaria. Sin embargo, no podemos soslayar que otros circuitos y tribunales le han dado un tratamiento distinto a la situación ante nos.

En consecuencia, al encontrarnos con una división doctrinal en los Circuitos de la Corte de Apelaciones de los Estados Unidos, el criterio para seleccionar uno u otro bloque no puede ser el que favorezca el resultado al cual se interesa llegar. Ese ejercicio constituiría un acto altamente subjetivo que se aleja de las normas de hermenéutica que deben regir al recurrir al derecho comparado. Como bien nos advierte el Dr. Jorge M. Farinacci Fernós y la estudiante Gabriela Rivera Vega:

> La influencia de fuentes transnacionales sobre el Derecho positivo puertorriqueño tampoco es uniforme; varía según el área. Como consecuencia, existe un rol importantísimo para las fuentes transnacionales al momento de analizar e incluso, adjudicar controversias jurídicas en Puerto Rico, que depende del caso. No obstante, existe una laguna conceptual y metodológica sobre cuándo y cómo deben utilizarse estas fuentes transnacionales. J. M. Farinacci Fernós y G. Rivera Vega, El uso de las fuentes transnacionales en el Derecho Puertorriqueño (Parte 1), 51 Rev. Jur. UIPR 189, 190 (2017).

Precisamente, para evitar esa laguna, antes de examinar las distintas posturas de los Circuitos de la Corte de Apelaciones de los Estados Unidos debemos tener

en mente cuál de las doctrinas que incorporaríamos por derecho comparado es cónsona y adelanta los propósitos legislativos y la política pública contenida en la legislación especial que nos ocupa. A modo de ejemplo, en Feliciano Martes v. Sheraton, 182 DPR 368 (2011), nos enfrentamos igualmente a tratamientos distintos brindados por dos bloques de Circuitos de la Corte de Apelaciones de los Estados Unidos. En esa ocasión, pesó en nuestro criterio pautar una norma consecuente con el propósito legislativo del estatuto laboral que nos ocupaba, a saber, la Ley de Acción por Represalia del Patrono, Ley Núm. 115-1991, 29 LPRA sec. 194a et seq. De esta forma, reconocimos en ese contexto que "el legislador pretendió que, al establecer su caso prima facie, el empleado no se enfrentará a un proceso probatorio oneroso, sino que bastará su comprobación de que la acción adversa que experimentó ocurrió al poco tiempo de haber incurrido en la alegada actividad protegida". Feliciano Martes v. Sheraton, supra, págs. 399-400.

Con ello en mente, abordemos las otras posturas de otros Circuitos de la Corte de Apelaciones de los Estados Unidos. El Primer Circuito de la Corte de Apelaciones de Estados Unidos, por ejemplo, ha validado que las defensas levantadas por primera vez en una moción de sentencia sumaria se consideren como una solicitud para enmendar las alegaciones. En González-Pérez v. Hosp. Interamericano de Medicina Avanzada, 355

F.3d 1, 5 (1er Cir. 2004), el Primer Circuito revisó una determinación de la Corte de Distrito de Puerto Rico, en la cual las defensas presentadas por primera vez en una moción de sentencia sumaria se consideraron como una solicitud de enmienda a las alegaciones. Una vez evaluadas bajo el lente de una solicitud de enmienda, la Corte de Distrito admitió las defensas presentadas tardíamente.

El Primer Circuito confirmó la decisión de la Corte de Distrito, pues determinó que la parte no levantó tales argumentos tardíamente de mala fe. Mas aún, el Primer Circuito resolvió que, aunque otras cortes requieren que en estos casos la parte presente una moción específica para solicitar la enmienda, **"[w]e decline to demand that level of formalism of the pretrial process"**. (Énfasis suplido). Íd., pág. 5 esc. 6.

De igual manera, la Corte de Distrito de Puerto Rico ha acogido tal postura del Primer Circuito. En <u>Landrau v. Solis-Betancourt</u>, 554 F.Supp.2d 117 (D.P.R. 2008), la parte demandante presentó por primera vez unas alegaciones en la etapa de sentencia sumaria. Ante ello, la Corte de Distrito optó por atender tales reclamos y se negó a despacharlos por el hecho de que no se presentaron previamente en la demanda original. A esos fines, la Corte de Distrito razonó que "this Court **prefers to resolve matters upon the merits** rather than upon procedural grounds when it can do so without

causing any additional **undue prejudice** to a party-opponent". (Énfasis suplido).[9] Íd., pág. 123.

De este modo, la Corte de Distrito ejerció su discreción para auscultar si, a la luz de las circunstancias particulares de ese caso, se podían considerar los nuevos planteamientos como una enmienda a las alegaciones presentadas originalmente. Íd. Así, empleó un análisis cónsono con el estándar de nuestro ordenamiento en torno a solicitudes de enmiendas a alegaciones; entiéndase, evalúa si la concesión de la enmienda causaría algún perjuicio a la otra parte.

Cónsono con ello, en el contexto laboral, la Corte de Distrito de Puerto Rico ha dispuesto que una teoría del caso presentada por primera vez en una oposición a una moción de sentencia sumaria puede considerarse como una solicitud para enmendar las alegaciones. Litovich v. Somascan, Inc., 2008 WL 5972761, pág. 4 (D.P.R. 2008);

---

[9]En Ocasio v. Hogar Geobel Inc., 693 F.Supp.2d 167 (D.P.R. 2008), la Corte de Distrito de Puerto Rico se enfrentó a una controversia similar. Así, una parte presentó una oposición a una sentencia sumaria con argumentos y alegaciones nuevas. Ante ello, la Corte de Distrito optó por resolver la controversia bajo fundamentos de otros Circuitos de la Corte de Apelaciones de Estados Unidos, los cuales no permiten que se presenten alegaciones nuevas en esa etapa. A la luz de lo anterior, desestimó la demanda presentada. Sin embargo, la Corte de Distrito desestimó la demanda **sin perjuicio** y le concedió un término de sesenta (60) días a la parte demandante para que demostrara causa por la cual se le debía permitir presentar una demanda con las nuevas alegaciones. Íd., pág. 173. Aunque tal proceder no necesariamente conlleva la administración más eficiente de un pleito judicial, sí representa una visión judicial promovedora de que las causas de acción, aunque presentadas tardíamente, se ventilen y se adjudiquen en sus méritos.

adoptado e incorporado en Litovich v. Somascan, Inc., 2009 WL 10719748 (D.P.R. 2009).

Asimismo, el Décimo Circuito de la Corte de Apelaciones de Estados Unidos ha resuelto que la presentación de alegaciones nuevas en una contestación a una moción de sentencia sumaria se considerará como una solicitud para enmendar las alegaciones. Martínez v. Potter, 347 F.3d 1208, 1211 (10mo Cir. 2003). Así, se ha razonado que "[i]ssues raised for the first time in a plaintiff's response to a motion for summary judgment may be considered a request to amend the complaint". Viernow v. Euripides Dev. Corp., 157 F.3d 785, 790 esc. 9 (10mo Cir. 1998). Lo anterior, responde al razonamiento de que "**a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover,** 'provided always that a late shift in the thrust of the case **will not prejudice** the other party in maintaining his defense'". (Énfasis suplido). (Citas omitidas). Evans v. McDonald's Corp., 936 F.2d 1087, 1090-1091 (10mo Cir. 1991).

Por supuesto, ello no impide que la parte contraria reciba una notificación adecuada y una oportunidad para que se exprese sobre la enmienda solicitada. Al contrario, en estos casos, el Décimo Circuito ha determinado que "our rule does not preclude the moving party from notice and an opportunity to be heard on whether an amendment should be permitted. After all, a

request to amend may be denied where the new theory would prejudice the moving party". Martínez v. Potter, supra, pág. 1212.

Similarmente, el Noveno Circuito de la Corte de Apelaciones de Estados Unidos ha considerado que los argumentos levantados por primera vez en una oposición a una moción de sentencia sumaria deben evaluarse bajo el estándar de una solicitud de enmienda a las alegaciones. Apache Survival Coalition v. United States, 21 F.3d 895, 910-11 (9no Cir. 1994). A esos fines, ha resuelto consecuentemente lo siguiente:

> We have held previously that, when issues are raised in opposition to a motion to summary judgment that are outside the scope of the complaint, "[t]he district court should have construed [the matter raised] as a request pursuant to rule 15(b) of the Federal Rules of Civil Procedure to amend the pleadings out of time". Íd., pág. 910.

Más aún, en Johnson v. Mateer, 625 F.2d 240 (9no Cir. 1980), el Noveno Circuito se negó a despachar los argumentos de una parte demandante por el hecho de que sus alegaciones originales fueron excesivamente amplias y generales. Una vez la parte demandante articuló apropiadamente y abundó en sus reclamos en su oposición a una moción de sentencia sumaria, el Noveno Circuito resolvió que la Corte de Distrito debió evaluar tal moción como una solicitud de enmienda a las alegaciones. Íd., págs. 241-242. Así, el Noveno Circuito explicó lo siguiente:

> It is indeed difficult to grasp the precise nature of the vague allegations made in Johnson's

complaint. However, **Johnson's failure to articulate the bases for his civil rights claim at the pleading stage should not have been fatal to his claim, as his affidavit filed in opposition to the motion for summary judgment made factual allegations** regarding property deprivation and harassment (confiscation of the tow truck, retention of business records, interference with contractual relations, and general harassment). **The district court should have construed the affidavit as a request pursuant to rule 15(b) of the Federal Rules of Civil Procedure to amend the pleadings** out of time and should have determined whether, based on the contents of the affidavit read with the complaint, triable issues of fact existed. (Énfasis suplido). Íd., pág. 242.

Asimismo, el Quinto Circuito de la Corte de Apelaciones de Estados Unidos ha incurrido en el análisis explicado para permitir que una oposición a una sentencia sumaria se trate como una solicitud para enmendar la demanda. En <u>Sherman v. Hallbauer</u>, 455 F.2d 1236 (5to Cir. 1972), la parte demandante presentó inicialmente una demanda que el Quinto Circuito describió como "a strange amalgam of allegations of misrepresentation and negligence". Íd., pág. 1238. Sin embargo, ante la presentación de una moción de sentencia sumaria, la parte demandante se opuso mediante la presentación de un memorando que alteró significativamente la teoría legal del caso. Ante ello, la Corte de Distrito declaró ha lugar a la sentencia sumaria.

Sin embargo, el Quinto Circuito revocó la decisión de la Corte de Distrito, pues determinó que el memorando debió considerarse como una solicitud para enmendar sus

alegaciones. Así, el Quinto Circuito resolvió lo siguiente:

> The legal theory advanced in that memorandum for interpreting the emerging facts furnished a basis for denial of summary judgment and at least a trial of the action against Hallbauer based on contract. True, the Shermans advanced the contractual theory late in the day. But Rule 15 of the Federal Rules of Civil Procedure permits a party to amend his pleadings out of time by leave of court, and commands that "[such] leave shall be freely given when justice so requires." It is true too that the Shermans's lawyer consumed no small amount of the court's valuable time in insisting upon his misrepresentation theory of the case. Still, **we conclude that in the interests of justice the district court should have construed the Shermans's frantically revised theory of the case, as plainly set forth in their memorandum in opposition to summary judgment, as a motion to amend the pleadings filed out of time. The command of Rule 15 is straightforward and permissive.** On the facts of this case, fair treatment for the Shermans requires that **they not be deprived of their day in court simply because, for a time, their attorney did much to insure that the day would never come. The district court should have allowed the amendment and must do so when the case is remanded for trial.** (Énfasis suplido). Íd., pág. 1242.

Para apoyar tal conclusión, razonó a su vez que una parte no debe ser privada de su día en corte por errores de su representación legal.

Como puede apreciarse, en el ámbito federal hay dos normas vigentes para atender la controversia ante nuestra consideración. Por un lado, la Opinión mayoritaria reseña las cortes que adoptan una visión autómata y formalista que no da paso a considerar nuevos argumentos presentados en una moción en oposición a que se dicte sentencia por la vía sumaria. Por otro lado, existe una tendencia en otras cortes que, a tenor con los intereses de la justicia, consideran los nuevos

argumentos insertados en una oposición a sentencia sumaria como una enmienda a las alegaciones originales, salvaguardando de esta manera el debido proceso de las partes en el pleito. Ésta marcada tendencia, avalada por el Primer Circuito y la Corte de Distrito de Puerto Rico, es más cónsona con los propósitos legislativos que enmarcan el procedimiento sumario de Ley Núm. 2.

## III.

En el caso de epígrafe, nos enfrentamos al caso de una empleada que, en su querella original instada al amparo de la Ley Núm. 2, alegó superficialmente que su patrono la despidió injustificadamente de su trabajo, en el cual laboró por cuarenta y tres (43) años. Tan sólo cuatro meses después de la presentación de tal querella, la nueva representación legal de la empleada presentó nuevos argumentos y alegaciones en una oposición a una moción de sentencia sumaria. A esos fines, explicó que, en su caso, se configuró un despido constructivo, pues presuntamente el patrono se dirigió hacia ella de forma irrespetuosa y humillante. De igual modo, expresó que se le impusieron unos cambios onerosos a sus labores que no le dejaron otra alternativa más que abandonar su cargo.

En virtud de lo explicado anteriormente, la empleada debía realizar tales aclaraciones, pues una causa de acción de despido constructivo exige que se aleguen hechos más allá de un despido injustificado. Si la empleada no presentaba estos reclamos, arriesgaba la desestimación de su causa de acción.

Ante este escenario, este Tribunal pauta correctamente que los empleados y las empleadas que presentan una acción bajo el procedimiento sumario de Ley Núm. 2 tienen la facultad de enmendar sus alegaciones, conforme a la Regla 13.1 de Procedimiento Civil, 32 LPRA Ap. V. En estos casos, procede otorgarles a los patronos querellados un término para expresarse y levantar defensas que surjan en relación a la querella enmendada. Así, se salvaguardan y protegen los derechos y garantías procesales de todas las partes.

Al resolver de esta manera, garantizamos que no se impongan trabas procesales que impidan la ventilación adecuada de los reclamos de los trabajadores y trabajadoras. Aunque las enmiendas a las alegaciones pueden extender la duración de un pleito, debemos recordar que la agilidad de un procedimiento de Ley Núm. 2 es en beneficio del obrero u obrera. Por tanto, si es propiamente el empleado o la empleada quien desea enmendar sus alegaciones, no se le debe impedir bajo el argumento de la naturaleza sumaria de la Ley Núm. 2.

Ahora bien, la controversia ante nuestra consideración nos exige a su vez auscultar si la empleada podía, mediante una contestación a una moción de sentencia sumaria, presentar estas alegaciones nuevas y distintas a las presentadas originalmente en su querella. Como pudo observarse, la Opinión mayoritaria pauta que ello no es posible. Debido a lo anterior,

desestima sin más, y con perjuicio, una causa de acción de despido injustificado.

No coincido con tal proceder. El andamiaje jurídico laboral de este ordenamiento va dirigido a promover y a facilitar que las causas de acción de los empleados y empleadas de Puerto Rico en contra de sus patronos se ventilen apropiadamente en sus méritos en los foros judiciales. Por tanto, entiendo improcedente que el reclamo de una empleada despedida se desestime **automáticamente** debido a que presentó nuevas alegaciones en una contestación a una moción de sentencia sumaria.

Según explicamos anteriormente, la presentación de una alegación nueva en la etapa de sentencia sumaria no debe conllevar su despacho automático. A la luz de Regla 13.1 de Procedimiento Civil, 32 LPRA Ap. V, procedía evaluar tales alegaciones como una solicitud de enmienda a la querella original. De este modo, el tribunal podría sopesar los distintos intereses de las partes, evaluar las circunstancias de cada caso y auscultar si la enmienda causaría algún perjuicio al patrono querellado. Mediante el ejercicio de su discreción, los foros primarios podrían evitar un fracaso a la justicia y promover que estos casos laborales se adjudiquen en sus méritos. Tal análisis, que tiene apoyo en varios Circuitos de la Corte de Apelaciones de los Estados Unidos incluyendo el Primer Circuito, es el más cónsono y apropiado con una reclamación de índole laboral en nuestra jurisdicción. Debido a que una Mayoría opta por

resolver lo contrario, respetuosamente disiento de tal proceder.

**IV.**

A la luz de los fundamentos expuestos, hubiese confirmado al Tribunal de Apelaciones, aunque por fundamentos distintos. En consecuencia, respetuosamente disiento del dictamen mayoritario.

Luis F. Estrella Martínez
Juez Asociado